Van Ness, J.
delivered the opinion of the court. The question in this case is, whether the assignment to Campbell and Hyslop is valid inlaw, of not. This must, in a great measure, be determined upon the face of the instrument itself, as a question of law. The assignment is made in trust; first, to satisfy a debt due to Hyslop & Co.; second, to pay all the other creditors, proportionally, on condition of their executing releases of their respective demands; and in case the creditors, or any of them, shall refuse to give such releases, then it is declared that the last mentioned trust shall cease and determine, and the trustees are required and directed not to execute it; third, in case of such refusal of creditors, or any of them, to give such discharge, then, in trust, (after paying the debt to Hyslop & Co.) to pay the whole of the avails of the property assigned, to such of the creditors^ ?r, and Henry, the assignors, shall ap *467 point, as soon as such refusal shall be known ; fourth, to pay the overplus, in any event, to Barnet and Henry.
On the part of the plaintiff, it is argued, that a debtor has a right to prefer one set of creditors to another, and that this assign mentis a bona fide exercise of such right. If that were true, there would be no difficulty in the decision of this cause. It has, frequently, been determined, both in this court and in England, also, before the introduction of the bankrupt system, that it is lawful to give a preference to particular creditors ; and if this assignment was calculated purely to effect that object, it would be valid. But 1 think it goes greatly beyond such a purpose, and contains provisions, which render the whole, in judgment of law, fraudulent and void. It does not actually give a preference, but is, in effect, an attempt, on the part of the debtors, to place their property out of the reach of their creditors, and to retain the power to give such preference at some future period. One object evidently was, to coerce the creditors to acquiesce in the terms offered to them. The language held to them is this, u if you will release your debts, you may participate in the benefits that may result from this assignment ; but if you refuse, we will lock up our property indefinitely, in such a way, that whether you ever get any part of it shall depend upon our will and pleasure; those of you who have shown a disposition to submit to the terms we have prescribed, may expect some favours from us; but you who have presumed to murmur, or to hesitate, and you, particularly, who have refused to comply with what we have determined to be just and reasonable between us, shall have nothing.’’
The moment any of the creditors, (and there were, in point of fact, several) refused to accede to the conditions of the assignment, the trust for the benefit of all the creditors ceased. What then was the condition of the property ? Until a new trust was declared, most clearly, (except as to Hyslop & Co’s, debt,) it was held in trust for the assignors themselves, and so it would continue to be held, until they saw fit to make a new declaration ; leaving it for them to determine, both as to the time and the manner of doing it. Nor can I perceive how the creditors could compel the assignors to make a new declaration of trust, by a bill in equity. The suggestion that they could, proceeds on the ground that the assignment, in this particular, is legal; and if that be true, it follows, that the assignors would have the *468 right, which could not be controlled by a court of equity, tQ des¡gnate such creditors, to whom the avails of the property assigned should be paid, as they might arbitrarily select. Now, as it is utterly unknown who they would select, as the objects of their favour, what creditor would be willing, (admitting, for a moment, that it is competent for any one of them to do it,) to file a bill, when it is clear, in case a decree should be made, ordering a new trust to be declared, that the assignors would have the power to exclude the very creditor who should be the complainant? After due consideration, 1 am utterly unable to discover any adequate relief for the creditors in a court of equity ; but whether they could obtain relief there or not, is quite, immaterial in this case. An insolvent debtor has no right to place his property in such a situation, as to prevent his creditors from taking it, under the process of a court of law, and to drive them into a court of equity where they must encounter great expense and delay, Unless it be under very special circumstances, and for the purpose of honestly giving a preference to some of his creditors, or to cause » just distribution of his estate to be made amongst them all. No such purpose is pretended in this case.
The event, upon the happening of which the trust for a' distribution among all the creditors was to become void, has taken place; and the executions were levied before any new declaration of trust was made; indeed, for aught that appears, no such declaration has ever yet been made. At'the time of the levy, therefore, the property, (except as to Hyslop & Co.) was held in trust for the debtors ; and if they can keep it locked up, in this way, in the hands of the trustees, and set their creditors at defiance, for three months, they may do so for three years, or for any indefinite period. 1 think, therefore, that this part of the assignment is void, under the statute of frauds; and that it would be establishing a most dangerous precedent, to declare it to be valid.
But it has been urged, that, admitting this assignment to be void, as to that part of it,,yet it is good, as it respects the trust for the payment of the demand of Hyslop & Co., and that the Jegal interest, in the whole of the property assigned, is vested in the trustees, so as to protect it against the executions by virtue of which it was seized, until such trust has been executed and satisfied. The better opinion seems to be, that even at *469 common law, a deed, fraudulent in part, is altogether void. In Fermer’s case, (3 Co. 78.) it is said, “the common law doth so “ abhor fraud and covin, that all acts, as well judicial as “ others, and which, of themselves, are just and lawful, yet be- “ ing mixed with fraud and deceit, are, in judgment of law, “ wrongful and unlawful.” And in the case of Wimbish v. Tailbois, (Plowd. 54.) Montague, Ch. J. lays down the same doctrine very strongly. “ Covin,” says he, “ may be when the “ title is good, and the title shall not give benefit to him that “ has it, by reason of the covin ; for the mixture of the good and “ evil together, makes the whole bad ; the truth is obscured by “ the falsehood ; and the virtue drowned in the vice.” The principles established by these authorities are sound and salutary, and a firm and energetic enforcement of them would go very far to baiffie the multiplied attempts that are unceasingly made by insolvents, to cover their property from their creditors, by every shift and contrivance which human ingenuity can devise. A grantee, who voluntarily becomes a party to a deed which is fraudulent in part, justly forfeits his right to claim a benefit from another part, that would otherwise have been good. It is not to be denied, however, that there are some cases that look the other way, and it is not on this ground alone that the point now under consideration is decided; for admitting that this assignment might, at common law, operate so far as to protect the trust for the benefit of Hyslop & Co. it is void, in toto, for another reason. It appears to be an established rule, that, where a bond is void in part, as against the positive provisions of a statute, the whole bond is void. This distinction was taken in the case of Norton v. Simmes, (Hob. 14.) between a bond, made void by statute, and by the common law; for upon the statute, 23 Hen. VI. if a “ sheriff will take a bond, for “ a point against that law, and also for a due debt, the whole “ bond is void, for the letter of the statute is so ; for a statute is “ a strict law; but the common law doth divide according to “ common reason, and having made that void which is against law, lets the rest stand ; as is 14 Hen. VIII. fol. 15.” It is mentioned, also, as a saying of lord Hobart, that “ the statute is like a tyrant, where he comes he makes all void; but the common law is like a nursing father, and makes void only that part where the fault is, and preserves the rest.” (Maleverer v. Red *470 shaw, 1 Mod. 35.)(a) The principle upon which the case of Xorton and Sirnms was decided, are applicable to deeds of every description which are void, in part, as against a statute. The statute of frauds declares, " every grant, alienation, bargain, conveyance~" &c. made contrary to its provisions, "to be utterly void, frustrate, and of no effect." This applies to the whole deed, even though part of it may have been good at common law. Indeed, if the whole of a conveyance, made in violation of a statute, is not held to be void, merely because it may be good in one particular, it would be very easy to elude the statute in every case. One good trust might always be insened; so that what could not be accomplished directly, would be attained indirectly (of which this very case affords a striking proof,) and, in this manner, the fraudulent purpose would be easily effected, notwithstanding the statute, and the triumph of debtors over their creditors would thus be complete. My reflections upon this case have resulted in a perfect conviction that this assignment cannot be supported, and, of course, that the defendants are entitled to judgment; and this is the opinion of the court.
Judgment for the defendants.

 Vide Collins v. Blantern, 2 Wils. 351. Per Wilmot, Ch. J.