Weight, J.,
delivered the opinion of the Court.
This is an appeal in the nature of a writ of error from a judgment rendered against the plaintiff in the Common Law and Chancery Court of the city of Memphis on the law side of that Court, in an action of replevin brought by him against the defendant, for the recovery of certain boxes of merchandize. The case involves the validity of an assignment made by George W. Hanna, bearing date the 16th of March, 1858, for, the benefit of John Canno-van, the plaintiff being the trustee in the assignment. Tho Court below decided, on the face of the deed itself, that in point of law it was fraudulent and void as against the defendant. The Sheriff, who had levied on tho merchandize, by virtue of an execution in favor of John Wild- *17 berger, against said Hanna, and refused to allow it to go to tlie jury as evidence, to which plaintiff excepted.
As a reason for the assignment, the deed, in substance, states that Hanna had, in January, prior to its execution, purchased from Phillips & White, a firm then doing a mercantile business in the city of Memphis, their stock of goods and merchandize in the store-house numbered two hundred and thirty-three, on the west side of Main street, in said city", and was conducting said business at said stand; that to. enable said Hanna to make said purchase and conduct said business, and to secure his indebtedness therefor, he had applied and obtained, for his accommodation, the endorsements of the said Cannovan upon divers promissory notes made by said Hanna, and specially enumerated in the deed; that also, for the accommodation of said Hanna in the premises, the said Cannovan had loaned him the use of his name, as maker, to divers other promissory notes which are specially described in the deed, and which had been delivered to different parties; also, that to add to said stock of goods, the said Cannovan, at the request and for the accommodation of said Hanna, had purchased goods upon time, and placed the same in said store-house as a part of said stock; that these goods were purchased of various persons, whose names, as well as the prices, are stated, and for which said Cannovan was individually liable; and, furthermore, that the said Cannovan, at the request of said Hanna, had consented, whenever it might become necessary in the prosecution of said business, to assume, endorse, or otherwise become security for said Hanna in incurring other liabilities in behalf of said business. And the said Hanna, in consideration of the premises, and to *18 protect and indemnify the said Cannovan from all loss which he might be subjected to in consequence of the before mentioned acts on his part, did bargain, sell and deliver to the plaintiff, all the stock of goods, wares and merchandize, (or such thereof as were legally the subject of deed of trust,) then in the store house, together with the fixtures thereof, “and also the further increase which may be made to said stock of goods or business.” And tho plaintiff was authorized and required to sell the effects assigned, from time to time, in the ordinary course of business, on such terms as should be most advantageous to the parties in interest in the deed, and after paying the expenses of the trust and of the business, allowing himself a reasonable salary for his services, to apply the proceeds of the sale to the payment of the foregoing liabilities, paying them as fast as they matured, and to that end he had power to make forced sales, by auction or otherwise. lie was required to keep regular accounts of sales, disbursements and liabilities; to allow the parties in interest constant and ready access to his books; to obey the said Cannovan in executing the trust, and to sell out said effects, and to close up said business whenever, and in any manner the said Cannovan might direct. He was impow* ered to exchange any of the effects assigned for other property, which was to be subject to the original trust; and might endorse on, or annex to, the deed, a statement of any further liabilities which the said Cannovan might incur for said Hanna, and the statement should become a part of the deed. Finally, after paying the expenses of the trust and of the business, as before stated, he was required to devote the proceeds of the sale or exchange to the payment of all liabilities incurred by sajd Cannovan *19 for said Hanna, or in behalf of said business; so that the said Oannovan should be saved from all loss in the premises, paying any surplus to the said Hanna or his assigns.
It is insisted, in argument, that the assignment, even if honestly made, is bad, because made to secure against future as well as present responsibilities. It must be borne in mind, that in the present attitude of the cause, our attention is confined to the question of fraud in law. If the deed be not fraudulent on its face, we cannot now pronounce against it, neither could the Court below. A provision in a deed to secure future responsibilities is not necessarily fraudulent. It depends on the bona fieles of the transaction. It cannot, therefore, be absolutely asserted of this provision that it is fraudulent in law. This is a matter of proof, and cannot bo determined on the face of the deed: Arthur vs. the Commercial & Railroad Bank of Vicksburg, 9 Smedes & Marshall’s Reports, 432; Hendricks vs. Robinson et als., 2 Johns. Ch. Rep., 308, 9. This' Court recognized this as the correct rule in a late case at Knoxville.
The most serious difficulty in the way of this assignment is its indefinite duration, and the obvious purpose for which it was made. The stock of goods in this store, with such as may in the future be purchased and brought into the business, are conveyed to the assignee, and with them he is to traffic as any other merchant. The grant- or’s affairs, as they were at the assignment, are not to be wound up, but just the reverse. The business is to be prosecuted, and new goods, from time to time, added for an indefinite period, at least until Cannovan directs otherwise. The expenses of the business and Cannovan’s *20 liabilities are to be paid; and Hanna, for whose benefit chiefly the arrangement was manifestly made, is to have the surplus, including what of the stock may remain, and the profits. This may be after the lapse of many years.
The law does not permit a debtor in failing circumstances, to convey all his property to trustees, so as to exempt it from execution for an indefinite time, to authorize them to hold it against creditors until the profits pay all charges, expenses and debts, and then to re-convey it, or permit it to revert to the original owner. Property in this manner and to this extent, cannot be withdrawn from the operations of the law in its due course, against the consent of existing creditors; neither can property be thus withdrawn and held with a view to traffic and make gain for the benefit of the debtor. An assignment may be drawn with a stipulation for the continuance of the debtor’s business by the assignee, and where this is done as ancillary to the winding up of the debtor’s affairs, and with the view of more effectually promoting the interests of creditors, it will be sustained as valid; but when a stipulation of this kind is intended chiefly for the benefit of the assignor, it will have the effect of avoiding the assignment. It is a settled rule of decision in such cases, that any provision which materially hinders and delays creditors in the assertion of their rights, .especially when coupled with a reservation of any part of the property to the gran ter in the deed, makes the whole void. No permanent, lasting and material benefit can be secured to him without vitiating the whole conveyance: 9 Smede’s & Marshall’s Rep., 433; Hafner vs. Irwin, 1 Wd. Law, 490; Hyslop vs. Clark, 14 Johns. 458; Sominerville vs. Horton, 4 Yer., 548. In the language of- the *21 Court of Appeals of Mississippi, the direct tendency of an assignment like this, by an insolvent or failing debtor, is to lock up the estate indefinitely, to create a perpetuity, to hinder and delay creditors unreasonably, and to secure an ultimate and permanent advantage to the grantor. This is so, no matter what may have been the actual intention of the debtor.
To be sure, we hold in Tennessee, that ordinarily the share of the assignor in the mere residuum, after paying the debts provided for in a deed, does not per se vitiate an assignment; Austin vs. Johnson, 7 Hum., 91, 2. Such a residuary interest necessarily arises in every loss where property is assigned to pay debts, or to satisfy other specified objects; and unless the assignment be merely col-orable, and made for the sake of the resulting trust, it is not void; Wilkes and Fontaine vs. Ferris, Johns., 335, 334. But still the question recurs, are the creditors unreasonably delayed by the nature and character of the assignment, or was it intended chiéfly for the benefit of the assignor, to withhold the estate from his creditors, and enable him or his assignee to trade upon it, and to secure to himself the ultimate profits? If so, this will avoid the assignment. But it seems, if there be no actual or intentional fraud, that this doctrine of legal fraud, because of excessive delay in closing a trust, does not necessarily apply, unless all, or the greater portion of the property of the debtor, be included in the assurance, and unless, also, its value be greatly or- considerably beyond the amount of the debt to be secured. If these circumstances concur, then the period of indulgence to the debtor becomes important to other creditors, because to the surplus beyond the grantee’s claim they must look for satis-
*22 faction of their demands: Bennett et als vs. Iron Works et als, 5 Hum., 612-618. It is, however, difficult, indeed, impossible, to lay down any precise and definite rule applicable in all cases. If the deed may be good, if it does not plainly appear upon its face to be fraudulent, it is the duty of the Court to suffer the jury to pass upon it. Undoubtedly a party not indebted may make an arrangement like that involved in this assignment, and so he may, with the assent of his creditors, however numerous: Bodley et als vs. Goodrich, 7 Howard U. S. Rep., 276-278. But if he be indebted, can he do so without the sanction of his creditors? We think not. It seems to us that there is sufficient upon the face of this deed of trust for the law to pronounce it fraudulent as against creditors. It was intended chiefly for the benefit of the grantor, (Hanna,) to enable him to carry on business in the name of another, and secure his property beyond the reach of creditors, he himself to have the ultimate nett fruits or profits of the adventure. We consider the law well settled that although a debtor may prefer a creditor by deed of trust, yet he cannot thereby contract for his own benefit. He may give up his property honestly to pay his debts, but he cannot secure to himself its use and enjoyment, and if he do so the transaction is fraudulent as against his other creditors: Gott vs. Dibrell, 10 Yer., 155.
This affirms the judgment and disposes of the case without any enquiry as to the effect o,f the fact, that the merchandize in question did not belong to the original stock on hand at the time of the assignment, but was subsequently, a few days prior to the levy, purchased by Hanna and brought into the store.
The position of the counsel of the plaintiff, that the *23 judgment in favor of Wildberger is void, bas nothing in it. The Circuit Court of Shelby county had jurisdiction of the subject matter of the judgment, and of the person of Hanna, by actual service of process; and the want of a plea or issue constituted, at most, but an error in the judgment, but did not make it void, or affect the authority of the Sheriff to execute writs issued upon it.
The judgment must be affirmed.