It was found as a fact by the learned judge who tried this action at Special Term, that the agreement between Bradner 
Furman and a part of their creditors, dated the 16th of November, 1854, and their several assignments for the benefit of creditors on the first of December following, constitute parts of one and the same transaction, *Page 137 
and, for that reason, as matter of law, "that said instruments were fraudulent and void as to the plaintiff and his judgment." Whether this legal conclusion can be sustained, presents the only question to be examined on this appeal.
It is not pretended that the assignors did not devote the whole of their property, both partnership and individual, to the payment of their just debts; but it is claimed that the manner
in which it was done, through the agreement of the 16th of November, taken in connection with the assignments, renders the whole transaction fraudulent and void.
When this agreement was made, the firm were evidently insolvent, and its terms show that they were desirous of avoiding a general assignment, by effecting a compromise with their creditors; and it was only in the alternative that they should fail in complying with the terms of the compromise that an assignment was to be made.
Undoubtedly one of the inducements to the creditors — whether it originated with them or the debtors themselves — to consent to the proposed compromise, was that part of the agreement which provided for their preference in the second class of creditors, for one-half of the respective claims of those who signed it, in the event that the compromise should not be consummated. But, how does such an agreement, by whomsoever proposed, vitiate the assignment which followed, regarding them even as one instrument?
It is quite true that the creditors to whom the agreement was presented, but who did not sign it, might well have supposed that they would not be preferred in the assignment therein provided for; but the agreement itself contains no threat to that effect, nor does it appear that any such was made orally. On the other hand, it cannot be doubted that the creditors who signed the agreement did so to increase their prospects of realizing one-half of their respective claims by being preferred for that amount in the second class of creditors, should an assignment become necessary. But the creditors who were requested to become parties to this agreement, and did not, were left entirely free to elect whether they would comply or refuse. Still it was argued, that, in *Page 138 
presenting this agreement to their creditors, Bradner and Furman in effect said to them: "Sign this, and you will get half your debt, but refuse, and you will fall into the third class and get nothing;" and it was claimed that this was an attempted coercion which the law will condemn. I cannot so construe the action of the assignors. What the exact condition of this firm was when the agreement was made, is not among the facts found, nor does it appear in the case. For aught that appears, the condition of the firm at that time, although insolvent, may have been such that a position in the second class of creditors, with a promise of fifty per cent of the demand, might not have been as desirable as one among the unpreferred creditors with a prospect of getting the whole. Besides, the prospect of the unpreferred creditors of realizing their claims, might possibly be materially increased in proportion to the number of those who signed the agreement; because, by signing it, they reduced the amount to be paid to them out of the assigned property respectively one-half. And although the assignors were deriving an advantage from this mode of compromise, yet it must be remembered that, whatever that advantage was, it could not be realized by them at the expense of the unpreferred creditors; for the surplus of the estate, after satisfying the demands of the second class of creditors, is, by the terms of the assignment, devoted to the payment of all other claims against the assignors. It does not follow, therefore, that, if any fraud were practiced by this agreement, it was so practiced upon those who did rather than upon those who didnot sign it. They who became parties to it do not complain. They were willing to accept fifty per cent of their demands and release the debtors, irrespective of any benefit which the assignment secures to them, and they now ask that its provisions shall be enforced.
To the position that the agreement which the creditors were requested to sign contained an implied threat that, if they did not execute it, they would be put in the third class and get nothing, it is a sufficient answer to say that it proposes nothing in terms, nor is there any thing implied in it *Page 139 
which the debtors had not a right to do if they chose. They were quite at liberty to make the preferences they did. If, in selecting the objects of their preferences, they were guided by mere caprice, or favoritism, rather than by the superior claims of some of their creditors over others, it is not a subject of legal complaint. How, then, does a thing become unlawful
because done in pursuance of a threat, which would be lawful if done without a threat? The intent is the same, whether expressed or concealed. An unlawful coercion of a creditor cannot be predicated of the declaration of an intention by a debtor to do what the law sanctions as right and proper. In no sense can it be said that an agreement by a debtor with a creditor to prefer him for one-half his demand in an assignment, on condition or in consideration that he should be released from the balance, is a fraud upon those who refuse to become parties to such a contract. The parties treat upon equal terms. The property is open to the legal pursuit of creditors, and their ordinary legal remedies have not in any degree been obstructed. That being so, and with the property still in the hands of the debtor, there is no legal objection to any contract of compromise between the two (Wakeman v. Grover, 11 Wend. 201, opinion of SUTHERLAND, J.), even though the consideration for such compromise moving to the creditor is the advantage of a preference over other creditors in a contemplated assignment; because the motive which prompts the preference, provided it secures an honest debt, is not the subject of legal complaint or inquiry.
It is not claimed that an assignment could provide for a part of the demand of a creditor on condition that he should release the balance of it, for that would be clearly void within numerous decisions of our courts. But in such case it would be void only
because such condition would hinder and delay creditors. That was the case in Grover v. Wakeman (11 Wend. 187), and inHyslop v. Clarke (14 Johns. 458), which were relied upon in the court below in declaring the assignment in this case void. But in those cases the delay which the conditions of the assignments caused the *Page 140 
creditors in the collection of their demands was the obnoxious feature which subjected them to condemnation.
In Hyslop v. Clarke, the trust created was to pay certain creditors a part of their respective claims on condition that they should discharge the whole of such debts; and, in case of a refusal, then that part of the trust should cease, and the proceeds of the assigned property were to be paid to such persons as should thereafter be designated by certain other creditorsnamed.
In Grover v. Wakeman there was a similar provision. There a class of creditors was preferred who should, within three months after being required in writing by the trustees, agree in writing under seal to receive from the trustees such proportions of their debts respectively as could be paid, in full discharge of their demands.
In speaking of Hyslop v. Clarke, in the case of Grover v.Wakeman, Senator TRACY, at page 224, says: "The objection to that assignment was that it did not actually give a preference, but was in effect an attempt on the part of the debtors to place their property out of the reach of their creditors, and to retain the power to give such preferences at some future time."
In his opinion in the last named case, the same learned senator says: "In both these cases the debtors seek to continue their control over the property after it is assigned, for the purpose of so wielding it as to coerce their creditors or some of them to pay a consideration for that which in justice and good consciencealready belongs to them." (p. 224.)
This control thus reserved to the assignors, and the consequent delay of the creditors, was the only vice of these assignments.
The cases just considered, therefore, are, in all their essential features, dissimilar to this. There the assignments contained conditions to be fulfilled, in regard to which the creditors were never consulted, to which they never agreed, and which they at once repudiated, and filed bills to have declared void, because they delayed creditors. On the contrary, in this case, that part of the assignment which secured the payment *Page 141 
of a sum less than the whole debt to the creditors, was agreed to in writing by such creditors as were affected by it, and they still claim the benefit of it. Neither was there any feature of it which could delay creditors. The whole of the property becameat once the subject of the trust. There were no terms to be agreed to and no conditions to be fulfilled. They were not to be paid if they would consent to the compromise, but because theyhad agreed to it. Surely the plaintiff was not hindered or delayed in prosecuting his legal remedies because he was requested, but refused, to become a party to the compromise agreement, and thereby lost its advantages; nor yet because the others assented and derived a benefit from it. Nor was he thus delayed, even if, as was held by the learned judge at Special Term, "the whole proceeding, viewed as one transaction, was anattempt to coerce the creditors to enter into the compromise," so long as that attempt did not, in a legal sense, obstruct the plaintiff in the collection of his demand.
Whatever objectionable features there may have been in the negotiations which led to this agreement, however much the fears of creditors may have been operated on, and, however little or much those fears may have tended to induce them to enter into the contract, they are not to be considered in this case. The question here is not whether the execution of the instrument was obtained by fraud, duress, or undue influence, but whether its legal effect, supposing it to have been properly executed, is to hinder, delay, or defraud creditors.
If there were an attempt at coercion, the assignment is not made the instrument to consummate it, as was the case in Hyslop
v. Clarke and Grover v. Wakeman, and, therefore, is not affected with that fault. The objection, therefore, is really not to the instrument itself, but to the influences which procured its execution. And so far as they are concerned who did execute it, they consented to whatever of sacrifice or loss the terms of that agreement might possibly involve, and are content; and as to those who did not sign it, the attempt at coercion was unsuccessful, and they have nothing *Page 142 
to complain of. I am clearly of opinion that the judgments of the General and Special Terms should be reversed, and with costs.
All concur except GROVER, J.
Judgment reversed. *Page 143