ALEXANDER SPAULDING, Respondent, v. PETER O. STRANG and GABRIEL FURMAN, Jr., Appellants.

*General Assignment— Conditional preferences— Composition deed— Coercion— Fraud.*

A general assignment of property in trust for the benefit of creditors—to pay, *first*, confidential and accommodation creditors; *secondly*, those creditors who had executed the conditional release, fifty per cent. on their claims; and *thirdly*, the residue of the creditors—is not fraudulent and void as to any class of creditors.

Such a trust, in no sense, operates to hinder or delay creditors in prosecuting their legal remedies against their debtors.

This action was commenced in the fall or winter of 1856, to set aside certain assignments for the benefit of creditors made by the firm of Bradner & Furman to the Defendant Strang, together with an agreement between said firm and certain of their creditors, on the ground that such assignments and agreement were fraudulent and void as against the creditors of said firm, and specifically as against the Plaintiff, one of such creditors; and also for an accounting from the assignee, and for other relief.

The complaint alleges that in March, 1855, the Plaintiff recovered a judgment against the assignors for nearly $3,000, and that in the ordinary way he had exhausted his legal remedies to realize the amount of his judgment, but without success; thus putting himself properly in a condition to apply for equitable relief.

About November 16, 1854, the firm offered to their creditors a proposition—in substance that they should, on or before December 1, 1854, accept fifty per cent. of their respective claims in full satisfaction thereof, and that those thus accepting should, in case the firm should be unable to comply with the terms of the proposition, and an assignment should become necessary, be placed in the second class of preferred creditors in such assignment for fifty per cent. of their respective claims.

Upon the basis of this proposition a release substantially in accordance with the proposition was prepared and presented to the creditors, and was executed, under seal, by more than fifty of said creditors, representing an aggregate indebtedness of about $90,000.

This release bears date November 16, 1854.

The firm failed to comply with the proposition and terms of release, and on the 1st day of December, 1854, the said firm, as such, and the individual members thereof, as to their individual property, made general assignments to the Defendant Strang, in trust, to pay, *first*, their confidential and accommodation creditors ; *secondly*, the creditors who had executed the conditional release, fifty per cent. on their claims; and *thirdly*, the residue of the creditors.

The action was tried at Special Term in the city of New York, by Sutherland, J., who found that the assignments and agreement were fraudulent and void as against the Plaintiff and his judgment, and judgment was accordingly, on the 31st of July, 1860, entered in favor of the Plaintiff, directing the payment, by the assignee, of the Plaintiff's claim and costs of the action, out of the trust funds in his hands.

Bradner, one of the firm, had in the progress of the action died, and the suit was continued.

In January, 1861, the Defendants appealed from the judgment of the Special to the General Term, and in April, 1862, the judgment was affirmed, with costs.

In May, 1862, the Defendants appealed to this Court.

*John S. Jenness* for Appellant.

*A. Spaulding*, in person, for Respondent.

FULLERTON, J.—It was found as a fact by the learned Judge who tried this action at Special Term, that the agreement between Bradner & Furman and a part of their creditors, dated the 16th of November, 1854, and their several assignments for the benefit of creditors on the 1st of December following, constitute parts of one and the same transaction, and for that reason, as matter of law, "that said instruments were fraudulent and void as to the Plaintiff and his judgment."

Whether this legal conclusion can be sustained, presents the only question to be examined on this appeal.

It is not pretended that the assignors did not devote the whole

6

of their property, both partnership and individual, to the payment of their just debts; but it is claimed that the manner in which it was done, through the agreement of the 16th of November, taken in connection with the assignments, renders the whole transaction fraudulent and void.

When this agreement was made the firm were evidently insolvent, and its terms show that they were desirous of avoiding a general assignment, by effecting a compromise with their creditors; and it was only in the alternative that they should fail in complying with the terms of the compromise, that an assignment was to be made.

Undoubtedly one of the inducements to the creditors, whether it originated with them or the debtors themselves, to consent to the proposed compromise, was that part of the agreement which provided for their preference in the second class of creditors for one-half of the respective claims of those who signed it, in the event that the compromise should not be consummated. But how does such an agreement, by whomsoever proposed, vitiate the assignment which followed, regarding them even as one instrument?

It is quite true that the creditors to whom the agreement was presented, but who did not sign it, might well have supposed that they would not be preferred in the assignment therein provided for; but the agreement itself contains no threat to that effect, nor does it appear that any such was made orally.

On the other hand, it cannot be doubted that the creditors who signed the agreement, did so to increase their prospects of realizing one-half of their respective claims, by being preferred for that amount in the second class of creditors, should an assignment become necessary. But the creditors who were requested to become parties to this agreement, and did not, were left entirely free to elect whether they would comply or refuse. Still it was argued that, in presenting this agreement to their creditors, Bradner and Furman in effect said to them: " Sign this, and you will get half your debt; but refuse, and you will fall into the third class and get nothing." And it was claimed that this was an attempted coercion which the law will condemn.

I cannot so construe the action of the assignors. What the exact condition of this firm was when the agreement was made, is not among the facts found, nor does it appear in the case. For aught that appears, the condition of the firm at that time, although insolvent, may have been such that a position in the second class of creditors, with a promise of fifty per cent. of the demand, might not have been as desirable as one among the unpreferred creditors with a prospect of getting the whole. Besides, the prospect of the unpreferred creditors realizing their claims might possibly be materially increased in proportion to the number of those who signed the agreement; because, by signing it, they reduced the amount to be paid to them out of the assigned property, respectively, one-half.

And although the assignors were deriving an advantage from this mode of compromise, yet it must be remembered that, whatever that advantage was, it could not be realized by them at the expense of the unpreferred creditors; for the surplus of the estate, after satisfying the demands of the second class of creditors, is, by the terms of the assignment, devoted to the payment of all other claims against the assignors.

It does not follow, therefore, that, if any fraud were practised by this agreement, it was so practised upon those who *did*, rather than upon those who did *not* sign it.

They who became parties to it do not complain. They were willing to accept fifty per cent. of their demands, and release the debtors, irrespective of any benefit which the assignment secures to them, and they now ask that its provisions shall be enforced.

To the position that the agreement which the creditors were requested to sign contained an implied threat that, if they did not execute it, they would be put in the third class and get nothing, it is a sufficient answer to say that it proposes nothing in terms, nor is there anything implied in it which the debtors had not a right to do, if they chose. They were quite at liberty to make the preference they did.

If, in selecting the objects of their preferences, the assignors were guided by mere caprice, or favoritism, rather than by the

superior claims of some of their creditors over others, it is not a subject of legal complaint.

How then does a thing become *unlawful* because done in pursuance of a threat, which would be lawful if done *without* a threat? The interest is the same, whether expressed or concealed. An unlawful coercion of a creditor cannot be predicated upon the declaration of an intention by a debtor to do what the law sanctions as right and proper. In no sense can it be said that an agreement by a debtor with a creditor to prefer him for one-half his demand in an assignment, on condition or in consideration that he should be released from the balance, is a fraud upon those who refuse to become parties to such a contract. The parties treat upon equal terms. The property is open to the legal pursuit of creditors, and their ordinary legal remedies have not in any degree been obstructed. That being so, and with the property still in the hands of the debtor, there is no legal objection to any contract of compromise between the two (Wakeman *v.* Grover, 11 Wend. p. 201, opinion of Sutherland, J.), even though the consideration for such compromise moving to the creditor, is the advantage of a preference over other creditors in a contemplated assignment; because the motive which prompts the preference, provided it secures an honest debt, is not the subject of legal complaint or inquiry.

It is not claimed that an assignment could provide for a part of the demand of a creditor on *condition* that he should release the balance of it, for that would be clearly void within numerous decisions of our Courts.

But in such case it would be void *only* because such *condition* would hinder and delay creditors.

That was the case in Grover *v.* Wakeman (11 Wend. 187), and in Hyslop *v.* Clarke (14 John. 458), which were relied upon in the Court below, in declaring the assignment in this case void.

But in those cases the delay which the conditions of the assignments caused the creditors in the collection of their demands, was the obnoxious feature which subjected them to condemnation.

In Hyslop *v.* Clarke, the trust created was to pay certain cred-

itors a part of their respective claims, *on condition* that they should discharge the whole of such debts; and in case of a refusal, then that part of the trust should cease, and the proceeds of the assigned property were to be paid to such persons as should thereafter be designated by certain other creditors named.

In Grover *v.* Wakeman there was a similar provision.

There a class of creditors was preferred who should, within three months after being required in writing by the trustees, agree in writing, under seal, to receive from the trustees such proportions of their debts, respectively, as could be paid, in full discharge of their demands.

In speaking of Hyslop *v.* Clarke, in the case of Grover *v.* Wakeman, Senator Tracy, at page 224, says: "The objection to that assignment was that it did not actually give a preference, but was in effect an attempt on the part of the debtors to place their property out of the reach of their creditors, and to retain the power to give such preferences at *some future time.*"

In his opinion, in the last-named case, the same learned Senator says: "In both cases the debtors seek to continue their control over the property after it is assigned, for the purpose of so wielding it as to coerce their creditors, or some of them, to pay a consideration for that which in justice and good conscience *already* belongs to them" (p. 224).

This control thus reserved to the assignors, and the consequent delay of the creditors, was the only vice of these assignments.

The cases just considered, therefore, are in all their essential features dissimilar to this. There the assignments contained conditions to be fulfilled, in regard to which the creditors were never consulted, to which they never agreed, and which they at once repudiated, and filed bills to have declared void, because they delayed creditors. On the contrary, in this case, that part of the assignment which secured the payment of a sum less than the whole debt to the creditors, was agreed to in writing by such creditors as were affected by it, and they still claim the benefit of it.

Neither was there any feature of it which could delay creditors.

The whole of the property became *at once* the subject of the trust.

There were no terms to be agreed to, and no conditions to be fulfilled. They were not to be paid *if* they would consent to the compromise, but because they *had* agreed to it.

Surely the Plaintiff was not hindered or delayed in prosecuting his legal remedies because he was requested, but refused, to become a party to the compromise agreement, and thereby lost its advantages, nor yet because the others assented and derived a benefit from it. Nor was he thus delayed, even if, as was held by the learned Judge at Special Term, " the whole proceeding, viewed as one transaction, was an *attempt* to coerce the creditors to enter into the compromise," so long as that attempt did not, in a legal sense, obstruct the Plaintiff in the collection of his demand.

Whatever objectionable features there may have been in the negotiations which led to this agreement, however much the fears of creditors may have been operated on, and however little or much those fears may have tended to induce them to enter into the contract, they are not to be considered in this case.

The question here is not whether the *execution* of the instrument was obtained by fraud, duress, or undue influence, but whether its legal effect, supposing it to have been properly executed, is to hinder, delay, or defraud creditors.

If there were an attempt at coercion, the assignment is not made the instrument to consummate it, as was the case in Hyslop *v.* Clarke, and Grover *v.* Wakeman, and therefore is not affected with that fault.

The objection, therefore, is really not to the instrument itself, but to the influences which procured its execution.

And so far as they are concerned who did execute it, they consented to whatever of sacrifice or loss the terms of that agreement might possibly involve, and are content ; and as to those who did not sign it, the attempt at coercion was unsuccessful, and they have nothing to complain of. I am clearly of opinion that the judgments of the General and Special Terms should be reversed, and with costs.

PARKER, J.—This action was by the Plaintiff, as a judgment-creditor of the former firm of Bradner & Furman, against Gabriel Furman, surviving partner of said firm, and Peter O. Strang, assignee, to set aside for the Plaintiff's benefit a general assignment made by said firm to the Defendant Strang for the benefit of their creditors.

Upon the trial, at Special Term, the assignment was held fraudulent and void as against the Plaintiff, and judgment was rendered accordingly. The General Term affirmed the judgment, and the Defendants have appealed to this Court.

It does not appear from the findings of the Court at Special Term that there was any fraud in fact, unless it is shown upon the face of the assignment, and the agreement in pursuance of which it was executed.

It is found by the Court at Special Term that, in August, 1854, the firm of Bradner & Furman failed in business and were unable to pay their debts, and that on the 16th of November of that year they entered into a written agreement with such of their creditors as were willing to enter into the same, whereby the creditors who signed the agreement covenanted that they would accept and receive from the firm, on or before the 1st day of December, 1854, in full satisfaction of the indebtedness of the firm to them, the paper of the firm for the amount of forty cents on the dollar, payable in six and twelve months, with satisfactory security, and for ten cents on the dollar, payable in eighteen months, without security ; or, if the firm should be unable to do that, then in case said firm should, on or before the 1st day of December, 1854, make an assignment to said Strang of all their property, preferring therein as first-class creditors an amount not exceeding $60,000, and preferring the said creditors who entered into said agreement as second-class creditors therein, to the amount of fifty cents on the dollar on their several claims, that they, the said creditors, would in such case, on the execution and delivery of such assignment, discharge them, the said Bradner & Furman, from all liability for the balance or remainder of their claims against said firm.

It was further found that, on the 1st day of December, 1854, the said firm did make and execute to said Strang an assignment of all their property, in trust, to pay all their debts; that said assignment was made in pursuance of said agreement, containing the recital that the said firm "have agreed to assign the property herein referred to for the benefit of their creditors, in the manner hereinafter mentioned," and that the same conformed to the agreement in preferring, in the first class, not more than $60,000, and in the second class the creditors who had signed said agreement, and them alone, to the amount of fifty per cent. of their respective claims; that the Plaintiff, not having signed the agreement, was not preferred in either the first or second class. And the Court also found that the agreement and the assignment constituted parts of one and the same transaction.

Taking the agreement and the assignment as one transaction, so far as it is possible so to do, it is shown that the creditors who signed the agreement were preferred in the second class *in consequence* of their having agreed to release fifty per cent. of their claims against the assignors; and this is all that is shown on the face of the papers, or by any finding in the case, tending in any respect to invalidate the assignment. It is true that the learned Judge before whom the cause was tried, in his opinion delivered at the Special Term, states one of the grounds of his conclusion that the assignment is, on its face, fraudulent and void as to the Plaintiff, to be "that the whole proceeding, viewed as one transaction, was an attempt to coerce the creditors to enter into the compromise." There is no such fact in the findings, and no such inference can be legitimately drawn from the papers themselves, though taken in connection with the fact, which is found, that the agreement was offered to the creditors for execution by Bradner & Furman, and signed by the creditors whose names are subscribed thereto, at their instance and request. Neither is there anything in the evidence tending to such a conclusion. The bare fact that the assignors presented the agreement to the creditors, and requested them to sign it, and that, in pursuance of such request, they did sign it, surely does not warrant the conclusion

that threats or other means of coercion were used, or any "moral duress" to procure its execution. The case must rest upon the fact above assented to—that the creditors who signed the agreement were preferred in consequence of their having agreed to release the assignors to the amount of fifty per cent. of their claims against them.

Does this fact render the assignment fraudulent and void as against the Plaintiff?

It is true that, by the arrangement, a benefit to the assignors—the release from a portion of their debts—is provided for. But this, unless it is in some way at the expense or to the detriment of creditors, does not, I apprehend, invalidate the assignment. Unless an assignment devotes the property assigned to illegal uses or trusts, or, by its provisions, operates to hinder, delay, or defraud creditors, no ground is furnished by the assignment itself, upon its face, for setting it aside as fraudulent and void as against creditors.

It cannot be pretended that there is in the assignment under consideration any unauthorized use or trust created. The whole property is placed in the hands of the trustee, to sell and dispose of, and apply the avails to the payment, in a specified order, of all the debts of the assignors, except fifty per cent. of the debts owing to a certain class of creditors, who consent to release the assignee from the payment thereof.

This release does not operate to reserve any portion of the property to the use of the assignors; but whatever is thus saved is to be applied to the benefit of the rest of their creditors.

The delay and hindrance to creditors, incident to the bare fact of an assignment to trustees, is not sufficient to invalidate the assignment (Nicholson *v.* Leavitt, 2 Seld. 516; Townsend *v.* Stearns, 32 N. Y. R. 213); and the transaction in question produces no other hindrance or delay.

The case is supposed by the Respondent, and was held by the Court below, to be within that class of authorities which have declared fraudulent and void assignments in which certain creditors were preferred *on condition* of their subsequently executing releases of their respective demands.

The law is undoubtedly well settled that such assignments are malâ fide on their face, and void as against creditors (Hyslop *v.* Clarke, 14 John. 458 ; Grover *v.* Wakeman, 11 Wend. 187).

The reason is obvious. It is a clear attempt by the debtor to coerce his creditors to accede to his terms, and a withholding of his property from them, to a greater or less extent, unless they do so accede. This is a hindering and delaying of creditors which the statute prohibits. As was said by the Court, in Hyslop *v.* Clarke: "It does not actually give a preference, but is, in effect, an attempt on the part of the debtors to place their property out of the reach of their creditors, and to retain the power to give such preference at some future period. . . . If they can keep it locked up in this way in the hands of trustees, and set their creditors at defiance for three months, they may do so for three years, or for any indefinite period."

The case of Grover *v.* Wakeman is a leading case on the subject. In that case there was a provision in the assignment for a preference to creditors in the second class who should, within three months after being required in writing by the trustees so to do, agree in writing, under seal, to receive from the trustees such proportion of their debts, respectively, as could be paid by the avails then remaining in the hands of the trustees, in full discharge of their respective claims and demands against the assignors.

The Court for the Correction of Errors held that such provision rendered the assignment void. The grounds of that decision appear in the opinions of Judge Sutherland and Mr. Senator Tracy.

Judge Sutherland, after remarking upon the right of an insolvent debtor to give preferences in his assignment, provided he devotes all his property to the payment of his debts, without any reservation or stipulation for his own advantage, says: "But where, instead of directly distributing his property among his creditors as far as it will go, *he places it beyond their reach* by an assignment, not merely for the purpose of saving it from one particular creditor, to be given to another, or to be equally divided among all, but for the purpose of enabling him to *extort from*

*some or all of them an absolute discharge of their debts,* as the *condition* of receiving a partial payment, he perverts the power to a purpose which it was never intended to cover, and which the principle on which the right to give preferences is founded will not justify."

The objectionable feature of the assignment in that case, and the distinction between it and the case at bar, will appear more clearly by referring to the remarks of the same learned Judge in his further discussion of the question. "Parties," he says, "not under legal disabilities, may make such contracts as they please, and if they are supported by a consideration, and there is no fraud in the case, they will not be disturbed. If a debtor, therefore, with his property *in his own hands,* and open to the legal pursuit of his creditors, can satisfy them that it is for their interest or the interest of any of them to accept 2s. 6d. in the pound, and give him an absolute discharge, there is no legal objection to it ; they treat upon equal terms ; the ordinary legal remedies of the creditor are not obstructed. But the case is materially changed when the debtor *first* places his property beyond the reach of his creditors, and then proposes to them terms of accommodation. He obstructs their legal remedies, hinders and delays them in the prosecution of their suits, by putting his property into the hands of trustees, with the view of getting an absolute discharge from his debts, and exempting his future acquisitions from all liability."

Mr. Senator Tracy puts forth more prominently and exclusively the effect of the provision to *delay* and *hinder* creditors *for the benefit of the assignor,* as the ground on which he would declare the assignment fraudulent and void. After adverting to the provision which gives a conditional preference to certain creditors, he says : " This appears to be a positive delay of this class of creditors, by placing the property out of the reach of their legal pursuit, and in a condition that it could not be distributed within any certain time, nor otherwise, except at the discretion of the trustees. . . . . . . Here the creditors are to be delayed in receiving property which undeniably belongs to them the minute

it comes to the hands of the trustees. For whose benefit is this delay? Not for creditors, for they will get no more after they shall assent, or refuse to assent to the conditions proposed, than they would get immediately, if there had been no such condition. The delay is manifestly to benefit the debtors, in order that they may secure from it an advantage to which they have no rightful claim. . . . . . . If the debtors had no right to lock up the property in the hands of their assignees until the creditors would execute releases, what right had they to lock it up in their hands until the assignees should choose to ascertain that the creditors would not execute releases? The principle of the delay is the same in one case as the other."

In the case at bar, neither of the elements of fraud for which the assignment in that case was held void, appears. There is no placing of the property of the debtors in the hands of the assignee, beyond the reach of their creditors, and *then* proposing terms of accommodation; no making of the release a *condition* of the preference; nor does the provision in question impose any hindrance or delay upon the creditors.

Giving the Respondent the full benefit of the finding, that the agreement and assignment are but parts of one transaction, it is impossible to make the transaction, like that in Grover *v.* Wakeman, an assignment with a *conditional* preference, the imposing of which condition, of itself, necessarily produces delay in the distribution of the avails of the property among the creditors. Here, the terms on which creditors would release were agreed upon while the property was in the hands of the debtors, and within reach of the creditors, without any coercion or duress; and the assignment was in pursuance of such agreement. It is, in respect to the provisions complained of as fraudulent, in effect (if any effect is given to the agreement) a composition deed, binding both upon the assignee and the creditors of the second class. There can be no allegation, surely, that, as against these creditors, the provision is fraudulent.

It is what they have consented to and agreed for (Hone *v.* Henriques, 13 Wend. 240; Rapalee *v.* Stewart, 27 N. Y. R. 310).

And I am quite unable to see how it is fraudulent as against the Plaintiff, or any other creditor of the assignors.

The view above taken is supported by the case of Hastings *v.* Belknap (1 Denio, 190), in which insolvent debtors having assigned their whole property to trustees for the payment of their debts, "in consideration," as stated in the assignment, "of the full, final, absolute, and unconditional discharge and release of the undersigned, by each and every one of their creditors, of and from all manner of action and actions," &c. The New York Common Pleas, upon the trial, charged the jury that the assignment was upon the condition that the creditors of the assignors should release them, and was therefore intended to coerce the creditors and extort from them a release, and that it was partial, and therefore void. Upon error to the Supreme Court this was held erroneous.

The Court say: " The Court below charged that the assign ment was fraudulent and void, because it was *conditional*, to wit: that Jones & Marcy's creditors should release; that it was coercive on their creditors, and made to extort a release. In terms it was absolute, and not conditional. The consideration of the assignment was a release already given or executed, and it was a present absolute assignment for the benefit of all their creditors. This is not an assignment made by a debtor for the benefit of his creditors, *upon condition* that they, in order to receive the benefit of it, shall discharge him from their demands; " and the judgment was reversed. See also Powers *v.* Graydon (10 Bosw 630).

The Respondent insists that the Appellants took no sufficient exception to the conclusions of law arrived at by the Court, to entitle them to question their correctness. In this the Respondent is clearly mistaken. The case states that "on the 1st day of August, 1860, the Court rendered its decision in writing, as will fully and at large appear in the copy of the same, contained in the judgment-roll herein ; and the Defendants' counsel thereafter duly excepted to all and every the conclusions of law in said decision and judgment contained, to wit : "—then setting

forth the substance of each conclusion of law stated by the Court in the decision.

That in the specifications of exceptions the more full and specific language of the judgment is adopted, rather than that of the decision, cannot prejudice the exceptions, since they specify and point out each conclusion of law, though not in the precise language of the decision. The provision of the statute under which the exceptions were filed is as follows: "For the purposes of an appeal either party may except to a decision on a matter of law arising upon such trial within ten days," &c. (Code, § 268). The "*matter of law*" is sufficiently excepted to if *pointed out with certainty* in the exception, though in language different from that in which it is stated by the Court or referee.

I think the judgment of the Court below is erroneous, and that it should be reversed.

All concur, except GROVER, J.

Judgment accordingly.