### SHELDON vs. DODGE & McCLURE.

A provision in an assignment for the benefit of creditors authorizing either the assignor or the trustees to declare future preferences, is fraudulent and void.

Accordingly *held* that an assignment, providing for the payment of the debts of the assignor, *according to several classes of preference,* and containing a provision that if any of the debts in the sixth class should become pressing, and the trustees should thereupon assume them, that the debts so assumed should be preferred over similar debts in the prior classes, was void as to the creditors of the assignor not assenting thereto.

An assignment for the benefit of creditors of all the assignor's " goods and chattels, wares and merchandizes, rights, credits, notes, accounts and demands," does not pass his interest in a sum of money borrowed by him, and then in the course of transmission to him from the lender.

Where a debtor, having negotiated a loan of money, which was in the course of transmission to him from the lender, made an assignment to trustees for the benefit of creditors, by which he preferred the lenders for the amount of the loan, but the money borrowed was not embraced in the assignment; *held* that it was a pro-

Sheldon *v.* Dodge.

vision for himself at the expense of the creditors, and that the assignment was fraudulent and void.

It is the province of the court, and not of the jury, to pass upon the legal effect of a provision, alleged to be illegal, in an assignment for the benefit of creditors; and where such a question was submitted to the jury to determine whether it was inserted with a fraudulent intent; *held* that the charge was erroneous.

Error to the Onondaga common pleas. Dodge & McClure brought replevin in the court below against Sheldon for a quantity of merchandize. Plea, *non cepit*, with notice of special matter. The property in question formerly belonged to Charles E. Morris, then a merchant at Jordan, who, on the 19th day of March, 1842, executed a general assignment to the plaintiffs as trustees for his creditors. The defendant, as a deputy of the sheriff of Onondaga county, seized the goods on the 25th June, 1842, by virtue of a *fi. fa.* against Morris, issued upon a judgment recovered in this court, by Artcher & Bennett, on the 25th of May preceding, for about $500. The question in the case was whether the assignment was valid, the defendant insisting that it was fraudulent as to creditors.

Morris, the assignor, and McClure, one of the trustees, had been partners in business under the name of C. E. Morris & Co., for about a year prior to October 1, 1841, when they dissolved, and Morris retained the effects, and, as the assignment stated, assumed the payment of the debts of the firm, and agreed to indemnify McClure against them. Morris continued the business in the store they had occupied. He had incurred further debts in the purchase of goods after the dissolution, and had, when the assignment was executed, between $8000 and $9000 in goods and debts due him, and owed a considerably larger amount, including the debts due from the firm before the dissolution. By the assignment, Morris, after reciting his indebtedness to various individuals, and his obligation to indemnify McClure against the debts owing by them as partners, conveyed to the plaintiffs as trustees, all his "goods and chattels, wares and merchandizes, rights, credits, notes, accounts and demands of whatsoever name and nature, except the necessary wearing apparel and

household furniture" of himself and his family; in trust to dispose of, for the benefit of his creditors, " in order and manner as follows, to wit." There were nine classes of debts which were preferred before the general creditors, in the order in which the classes were numbered in the assignment. The *fourth* class consisted of certain specified debts of the assignor for which he and McClure were primarily liable to the creditors, and for which the plaintiff, Dodge, was liable as endorser or surety; which debts, being four in number, were to be paid in the order, among themselves, in which they were mentioned in the assignment. The *fifth* class embraced all other debts owing by the assignor individually, or as a partner, for which Dodge was liable as endorser or surety. The provision for the *sixth* class was as follows: " Sixth, to pay and discharge all the debts and liabilities contracted by the firm of C. E. Morris & Co., *and if any of said last mentioned debts or liabilities become pressing, and the said Dodge shall as surety, or individually become responsible, then in that case the said debts so assumed by said Dodge, are to be preferred among the said partnership debts.*" The *eighth* class was a debt owing by the assignor " to William Morris of *about one thousand dollars.*"

The defendant proved that William Morris was a brother of Charles E. Morris, and had formerly lived in the county of Onondaga, but when the assignment was executed he was a resident of the state of Alabama; and that both C. E. Morris and the plaintiffs had said that this debt due to him from his brother was five hundred, and not one thousand dollars. On the part of the plaintiffs it was shown that though only five hundred dollars was actually owing to W. Morris when the assignment was executed, C. E. Morris was expecting a further sum to be sent him by W. Morris, and supposed it might then be on the way; but it did not appear on what account this money was expected to be received. It was proved that McClure was a person of pecuniary responsibility.

The plaintiffs, as trustees under the assignment, took possession of the property, made an inventory, and commenced selling some of the goods by retail. Those in question in this suit

were in boxes when seized by the defendant. There was other evidence bearing upon the question of actual fraud, which did not raise any disputed question of law upon which an opinion was given by this court, and need not be detailed here.

The defendant's counsel requested the court below to charge 1. That the provision respecting the sixth class of preferred debts—authorizing a further preference among the creditors of that class, to depend upon the acts of Dodge, one of the trustees— was illegal and rendered the assignment fraudulent and void against creditors; and 2. That the direction in the assignment to pay W. Morris $1000 was fraudulent, if the jury should find that only $500 were due; and even if C. E. Morris expected himself to receive from W. Morris a further sum of $500, the provision in the assignment for the payment of the whole $1000 was still fraudulent.

The court charged the jury upon the first proposition, that if the assignor reserved control of the property, or intended to do so by the clause as to the sixth class of debts, that would render the assignment fraudulent; that in cases of this kind there must be an absolute disposition of so much of the property as is assigned; that the assignor must declare the full trust, and reserve no further power of disposition till the debts are paid; that it was for the jury to determine from the evidence whether it was *the intention* that the assignor should direct in any way as to the debts to be assumed by Dodge, under the sixth clause, or whether that clause was not intended to prevent McClure being put to costs and trouble in regard to the company debts of McClure & Morris, by getting Dodge to assume those which pressed, and then preferring him in regard to such as he should so assume. As to the other point, the court charged that if the debt to W. Morris was stated at a false amount for the purpose of benefitting the assignor, the assignment would be fraudulent; that the assignment was general and passed all the property of the assignor, and that it was for the jury to consider whether it was actually believed by him " that he was the owner of a note or other remittance then on its way to him, and owed a debt for the amount remitted, or whether this was intended as

Sheldon v. Dodge.

a cover;" on the former supposition the assignment would not be affected, but otherwise it would be void. The court refused to charge otherwise upon the points submitted, and the defendant's counsel excepted to the refusal to charge and to the charge actually given. The plaintiffs had a verdict upon which the court rendered judgment, and the defendant brought error.

*A. Taber,* for the plaintiff in error. 1. The provision respecting the sixth class of creditors authorized future preferences, at the will of one of the trustees. This was illegal, and rendered the assignment void. (*Grover* v. *Wakeman,* 11 *Wend.* 187.) 2. The preference in favor of W. Morris for $1,000, under the circumstances, operated to enable the debtor to secure to himself $500 for his own benefit, in defiance of his creditors. (2 *R. S.* 135, § 1; *Mackie & Cairns,* 5 *Cowen,* 547.)

*W. Porter, Jr.* for the defendant in error.

*By the Court,* JEWETT, J. The plaintiffs' right to recover depends on the validity of the assignment to them by C. E. Morris; for, unless that conveyance can be sustained, the defendant was justified in levying upon the property under the execution in his hands. It seems to me that it contains a provision which, upon settled principles, renders it fraudulent and void against all such creditors of Morris as have not assented to it. I take it to be well established, and the doctrine was not controverted on the argument, that a debtor cannot put his property beyond the reach of his creditors, by assigning it to trustees for the payment of his debts, unless at the time he definitively settles their respective rights under the conveyance. (*Hyslop* v. *Clarke,* 14 *John.* 458; *Wakeman* v. *Grover,* 4 *Paige,* 41; *S. C. in error,* 11 *Wend.* 187.) When the last mentioned case was under consideration in the court for the correction of errors. Mr. Justice Sutherland declared that it had "repeatedly been decided that an assignment which does not declare the uses, but reserves to the assignor the power of subsequently doing

it, is fraudulent and void; and as the assignor cannot reserve the power of giving preference, to himself, he certainly cannot legally confer it upon his assignee. The same objection in principle exists in both cases. *Barnum* v. *Hempstead*, (7 *Paige*, 568,) was the case of a bill filed by a judgment cred- tor to set aside a voluntary assignment of property, made by the debtors to trustees, to sell and apply the proceeds to the pay- ment of their debts. Preferences were given to three classes of creditors before the general creditors were reached; and there was then a provision authorizing the trustees, *in their discretion*, to pay any claims or demands against the assignors on account of certain specified contracts; and also to discharge all small debts due or to become due, to persons at a particular place, to an amount not exceeding $500, *in preference to any of the creditors referred to in the classes before mentioned.* The chancellor held that this discretionary power to make future preferences, was calculated to injure, delay, and hinder creditors in the collection of their just debts, and that it ren- dered the assignment fraudulent and void against such credit- ors. He added, " So long as debtors are permitted to make assignments of their property in trust for the payment of their debts, without consulting their creditors on the subject, it is ab- solutely necessary for the protection of the rights of the latter, that the equitable interests in the assigned property should be fixed and determined by the assignment itself. Neither the debtor nor his friendly assignees, who are generally selected by himself, should have the power of giving preferences after- wards to any class of debts or of creditors."

It was said on the argument that the provision under con- sideration could not in the actual circumstances of this case prejudice the creditors provided for in the earlier classes, be- cause those in the fourth and fifth classes could resort to McClure, who was primarily liable, and abundantly responsi- ble, and those creditors could not be injured by a future pre- ference over them in favor of those in the sixth class. If the facts are as the argument assumes, still it cannot change the uestion. It might as well be argued that a general power in

Sheldon *v.* Dodge.

the assignees to make future preferences would be valid, because it had turned out in the particular case that the property assigned was sufficient to pay all the debts of the assignor. The vice is inherent in the assignment itself, and no future event can make a conveyance valid which contains illegal provisions. (*Boardman* v. *Halliday*, 10 *Paige*, 223.) Besides, the argument fails entirely as to a portion of the creditors in the fifth class, which includes individual creditors of Morris as well as those whose demands were against him and McClure. I am satisfied that the provision referred to respecting the creditors in the sixth class, renders the assignment fraudulent and void against the creditors whose process the defendant assumed to execute.

The preference in favor of W. Morris for $1000 presents an objection which I think is also fatal to the assignment. The actual debt due him from the assignor was only $500, though it was shown that the latter was in the daily expectation of receiving from him a further sum of the same amount. Upon what consideration this was to be received does not distinctly appear, but the inference clearly is that it was an advance by way of loan, to be afterwards repaid. If so, in what does it differ from a direct provision, for the future benefit of the assignor, to the amount of $500, at the expense of his creditors? The assignment appropriates so much of his property to repay W. Morris for this money, which the assignor was himself to receive. It is insisted by the plaintiff's counsel that the money from W. Morris, when received, would pass into the hands of the assignees for the purposes of the trust; or that this, at all events, was a question of intent, which had been passed upon by the jury. In my judgment the money thus expected to be received, did not fall within any of the terms contained in the description of the property conveyed in the assignment. It was neither goods, chattels, wares, or merchandize; nor was it notes, accounts, or demands. Was it a "right?" most clearly not. It had nothing of the character of a claim. The assignees could not claim it under the assignment, when received by the assignor; and the effect of the provision was, in my

judgment, tantamount to a direct provision for the benefit of the assignor. Honesty and fair dealing required that the truth of the transaction should have been disclosed on the face of the assignment; instead of which the provision was made to wear the appearance of a simple preference of an existing debt. It was in truth a mere disguise, under color of which the assignor is enabled to enjoy a secret interest in property to the amount of $500, respecting which no clue is furnished to the creditors by the assignment. Conceding that the validity of the assignment in this respect depended upon the intent of the assignor, still, the doctrine of the charge cannot be sustained. The court instructed the jury that the whole of Morris's property passed to the assignees; and it was, in substance, suggested that they might find that he honestly believed that some note or evidence of debt was on its way to him, the sending of which created a debt against him to that amount. It has already been stated that the assignment does not contain terms adequate to pass the subject matter of the expected remittance. It has no general words embracing every description of property, and nothing could be claimed under it except such as would fall within the terms employed. For instance: if Morris had been the owner of real estate, it could not be pretended that it would pass by this assignment; and for reasons equally strong, money on hand would not be embraced. There was no evidence in the case to raise the inference suggested in the charge that Morris believed that a note or other security was on its way to him. According to the evidence, it was money and not a security for money, which he was looking for; and if, after the execution of this assignment, money had been received by him from the expected source, the assignees would not have been able, I apprehend, to have made title to it under the assignment. I think there is reason to say the jury were misled by this instruction.

The court, after laying down in general terms the correct doctrine in respect to reservations of a right to make future preferences, after an assignment, for the benefit of creditors, has taken effect, submitted to the jury as a question of fact whether

it was the intention of the parties to this conveyance, that Morris should direct in any way as to the debts to be assumed by Dodge; or whether the clause of the assignment under consideration was not inserted to prevent McClure from being put to cost and trouble in regard to the partnership debts of Morris & McClure, by procuring Dodge to assume those which pressed, and then preferring him. It certainly was not the province of the jury to pronounce upon the legal effect of the provision in question; for that was the province of the court. No question of intent in respect to it was in issue. The only point in dispute was as to its legal effect, and that was matter of law, upon which the court and not the jury was to respond.

Believing that the court below erred in the particulars to which I have referred, I have, without examining several other questions which have been made, come to the conclusion that the judgment of the common pleas ought to be reversed.

Judgment reversed.