# JAMES H. BIRDSALL
## vs.
# PHILEMON H. WELCH.

1. The setting down of a cause for hearing on bill and answer is to be taken as an admission by complainant of the truth of the whole of the answer, not only of the facts stated in direct response to the bill, but also of all those set up by way of affirmative defense.

2. Whether it be on a trial by jury or in chancery, fraud in fact must be made out affirmatively by the party who makes the charge.

3. Where a suit is pending against a debtor and is approaching trial, another creditor has a legal right to protect himself by taking an assignment of such debtor's property as security for the payment of his debt, and it is no badge of fraud that the property assigned exceeds in amount the claim of the creditor, since other creditors may by paying the debt release the property, or may avail themselves by other modes of the equity of redemption; but the *bona fides* of such a transaction is always one of fact.

4. If there have been good faith and a valuable consideration on the part of the purchaser the deed is valid, notwithstanding there may have been a fraudulent purpose on the part of the grantor to hinder and delay his creditors.

5. Although under the statute of Elizabeth a *bona fide* purchaser without notice takes no title by his conveyance from a fraudulent grantee, yet the rule is different if his purchase be made directly from a fraudulent grantor.

6. Where A, having a judgment for damages against B, levies execution upon personal property previously conveyed by way of chattel mortgage to C, on the ground that the deed of conveyance is fraudulent, and C, replevies from the officer, a verdict and judgment in the replevin suit in favor of C settles the question of fraud and is conclusive evidence to establish the validity of the deed against A in a subsequent suit in equity attacking the same deed as fraudulent.

7. Although courts of equity have concurrent jurisdiction with courts of law in all matters of fraud, yet when the cause has already been tried and determined at law, equity cannot take cognizance of it, unless there be an addition of some equitable circumstance to give jurisdiction, such as some defect of testimony or other disability which a court of law cannot remove.

8. In a replevin suit the marshal is only the nominal defendant; the real defendant is the party in whose name the execution issued.

9. All persons who are represented by the parties to a judgment and claim under them or in privity with them are equally concluded by the judgment and the proceeding in which it was obtained.

10. A promissory note of the complainant held by the defendant in a judgment creditor's proceeding, cannot be allowed as a set-off against complainant's judgment, but the decree will be without prejudice to the defendant's right to proceed at law.

Equity, No. 1,253. Decided November 15, 1868.

BILL in equity by a judgment creditor to obtain the cancellation on the ground of fraud of two deeds made by the judgment debtor, or at all events to have the property conveyed sold, and the plaintiff's debt paid out of the proceeds. The allegation being that the deeds were made pending a suit at law and but a few days before plaintiff recovered his judgment, and that their purpose was expressly to defeat and hinder and delay plaintiff in obtaining satisfaction of such judgment should he obtain it. The answers denied all fraud and alleged one of the deeds to be by way of security. The hearing was upon bill and answers, and the decree below was in favor of plaintiff from which the defendants took this appeal. The further facts are sufficiently stated in the opinion of the Court.

MESSRS. CARRINGTON & WILSON, for complainant.

The conveyances are fraudulent and void and were intended to hinder and delay the plaintiff in the collection of his judgment in the then pending suit for damages if he should obtain it. When a claim is founded either in contract or in tort, for example in an action of slander, the plaintiff from the time action is begun is so far a creditor as to be able to avoid a conveyance made with intent to defraud him. 1 American Leading cases, p. 42; 18 Johnson, 425; 4 Bibb, 165. It also appears, upon the defendant's own showing, that upon a final settlement between Welch and Talmadge, so far from Welch being indebted to Talmadge, there was a balance in Welch's favor of about $825.05, and therefore the unnecessary and complicated arrangement which they made was obviously intended to defraud plaintiff. The real and personal property is amply sufficient to satisfy plaintiff's judgment, and leave a bal-

ance sufficient to pay whatever may be due Talmadge and the claims of all other creditors of Welch, so far as appears from the pleadings and papers in this cause. A court of chancery will therefore require the property, or so much thereof as may be necessary, to be sold and the proceeds applied to the satisfaction of plaintiff's judgment, and the just claims of all the creditors of Welch properly before the Court.

MESSRS. A. G. RIDDLE and R. S. DAVIS, for defendant.

The appellant in this case insists that Birdsall, the judgment creditor, was not a creditor in contemplation of law until after the judgment was rendered; and that the commission of a trespass, *vi et armis*, does not create a lien on real or personal property from the time of its commission to the rendition of a judgment in the case, and, therefore, Birdsall only became a creditor from and after the date judgment was entered in his favor. Messerve *vs.* Dyer, 4 Greenleaf, 52; McErvin *vs.* Bering, 1 Hawks, 474.

A debtor has a right at common law to prefer one creditor to another. Brooks *vs.* Marbury, 6 Curtis, 517.

A deed made upon a valuable and adequate consideration, which is actually paid, and the change of property is *bona fide*, or such as it purports to be, cannot be considered as a conveyance to defraud creditors. Wheaton *vs.* Sexton's Lessee, 4 Curtis, 454; Hinds' Lessees *vs.* Longworth, 11 Wheat., 199; Sexton *vs.* Wheaton, 8 Wheat., 242.

MR. JUSTICE WYLIE delivered the opinion of the Court:

This professes to be a creditor's bill, filed by Birdsall, to set aside as void for fraud two deeds made by the defendant Welch, and to subject the property thereby conveyed to sale, under decree of this Court, for the common benefit of Welch's creditors; or, in any event, to have the property sold and the proceeds afterwards distributed under the directions of the Court, whether the deeds be fraudulent

or not. Both these deeds bear date the 2d of December, 1867. One was a deed of trust to R. S. Davis, assigning all the household furniture and stock in trade belonging to Welch to secure certain debts due by him to the defendant, amounting to more than $3,000.

The other was a deed of absolute conveyance from Welch to Talmadge for a house and lot in this city for the consideration of $10,000.

At the time these deeds were executed there was an action pending at law in this Court, brought by Birdsall against Welch, claiming damages for false imprisonment, which came on to be tried just two days after the execution and delivery of the deeds, and which resulted in a verdict and judgment in favor of the plaintiff, for $875 and costs.

The bill charges that both the deeds were made without consideration, and with the fraudulent purpose on the part of Welch and Talmadge to defeat the collection of the judgment which they expected would soon be entered in the said action for false imprisonment.

The answers of these defendants show that Talmadge was a creditor of Welch at the time for the full amount of the debts secured by the deed of trust to Davis and more, and aver that the deed was given in good faith to secure those debts, and with no intent to delay, hinder or defraud Birdsall, although Talmadge says he was aware at the time it was given of the pendency of the action against Welch.

Welch further alleges, in his answer, that he is the holder of Birdsall's promissory note for a valuable consideration, amounting to $433, which he prays to have set off against Birdsall's judgment.

He also claims, by way of plea, that the question of fraud in the deed of trust to Davis was determined in a trial at law in this Court in an action of replevin, in which Davis was plaintiff and the complainant, Birdsall, was the substantial defendant.

The proceedings in that action are also referred to by complainant and made an exhibit to his bill.

The record of that case shows that after Birdsall had obtained his judgment against Welch, he issued an execution for its collection ; that his counsel indemnified the marshal and had a levy made on the property which had been assigned to Davis as trustee, treating Davis' deed as void ; that Davis replevined the goods; that the cause was tried by jury, and a verdict and judgment obtained in his favor, nominally against the marshal, but substantially against Birdsall, who was the plaintiff in the execution. As to the absolute deed from Welch to Talmadge, it is shown by the answer that Talmadge was induced to make the purchase in order to get Welch to give him the security for his deed of trust to Davis, and that both deeds were the result of the same negotiation.

It is further shown by the answers that at the time of the sale the real property was incumbered to the amount of $7,400 ; that Talmadge undertook to pay off the incumbrances and gave his promissory notes to Welch for the balance ($2,600) which Welch immediately thereafter transferred to Mayo & Co., of Richmond, towards satisfaction of a debt greater than the amount which he owed to that firm. These notes were secured by a deed of trust given by Talmadge upon the property.

This cause was set down for hearing by the complainant on bill and answers, and, there was necessarily no testimony taken on either side, but as we are to determine the controversy solely on the pleadings, it is important that we should consider in the outset the effect of setting down a cause for hearing on bill and answer.

This is always the act of the complainant in a cause; it cannot be done by a defendant. Its effect is to deprive the defendant of the opportunity to establish the defense by testimony. If complainant intends to deny the truth of the defendant's answer, it is his duty to do so by filing a replication, which would put the cause at issue, and then defendant has the right to make out his case by evidence.

By setting down the cause for hearing on bill and answer, complainant is taken to admit the truth of the whole of defendant's answer, not only of the facts stated in direct response to the bill, but also all those set up by way of affirmative defense. Otherwise, it would always be in the power of the complainant to deprive the defendant of the opportunity of taking evidence to establish the defense set up in his answer. This doctrine is perfectly reasonable, and fully settled by all the authorities. See Cooper's Eq. Pl., 328, 329, and Story Eq. Pl., ch. 19, sec. 877.

The answers in this case must, therefore, be taken to be true, not only so far as they are responsive to the bill, but also as to all their new and affirmative statements of facts.

Whether it be on a trial by jury or in chancery, fraud in fact must be made out affirmatively by the party who makes the charge.

In the present case, we find nothing on the face of the transaction which amounts to fraud in law. If there be fraud in the case, it must be found in the motives of the parties to whom or for whose benefit the deeds were made.

Talmadge was a creditor of Welch and as the answers show, a most meritorious creditor. His claims were part due; the defendant Welch was in failing circumstances. If Birdsall should obtain a judgment to a large amount against Welch, the very property which in equity and good conscience is shown to have belonged to Talmadge, might be swept away by Birdsall's execution and Talmadge ruined in fortune. He had a perfect right to secure himself, and it was his duty to do so, promptly and vigilantly. It was not even a badge of fraud to take security or property beyond the amount of his claim, if that was done in this instance, which is doubtful. In Donns vs. Kissam, 10 How., 108, the Supreme Court reversed a judgment on the ground that the Circuit Court had told the jury that this circumstance was a badge of fraud. It is no badge of fraud, "says the Court," for a mortgage which is a mere

security, to cover more property than will secure the debt due. Any creditor may pay the mortgage debt and proceed against the property, or he may subject it to the payment of his debt by other modes of proceeding."

Were it true in law that no creditor could take measures to secure himself from loss by a debtor against whom actions were pending and near trial, because his doing so might defeat or delay the collection of judgment, for the same reason no judgment creditor ought to be permitted to avail himself of his superior diligence, because to do so would defeat the claims of other creditors who had not been equally diligent. For a judgment is only one form of security, and in itself is not more meritorious than a mortgage or deed of trust; otherwise diligence itself would become a badge of fraud, and so every securty would be void for fraud, except such as might be satisfactory to everybody. In cases arising under the statute of Elizabeth, Ch. 5, it may be laid down that under almost any circumstances (if the cause be a trial at law) the question of fraud or no fraud is one for the consideration of the jury. So, too, in chancery there are no rules establishing particular circumstances to be indelible badges of fraud, but the question of *bona fides* is there also one of fact. (See 1st vol. Smith's L. Ca. 41.)

In the present case good faith on the part of Talmadge is perfectly reconcilable with all the facts before us, and is solemnly declared by him in his answer under oath as to both transactions, and is admitted by the complainant in his act of setting down the cause for hearing. Whatever may have been the design of Welch, the good faith of Talmadge is enough to sustain these deeds. If there have been good faith and a valuable consideration on the part of the purchase, the deed is valid, notwithstanding there may have been a fraudulent purpose on the part of the grantor. In Astor *vs.* Wells, 4 Wheat., 517, the Court held that the fraudulent purpose of the debtor to cheat his creditors by

conveying his property would not affect one who had purchased the property in good faith.

And in Roberts and Boyd *vs.* Anderson, 3 John. Ch. R., the same doctrine was laid down by Chancellor Kent while he took occasion to retract an erroneous opinion on the point which he had expressed in another case. "Such a conveyance," he says, "is supported by the proviso (in the sixth section of the act of 13th Elizabeth) however fraudulent the intention of the grantor might be, and the contrary impression which I had once received on this point from some of the English cases, without at the time adverting to this proviso, and which led me to the dictum in Hildreth *vs.* Lands (2 Johns. Ch. R.), was properly corrected by Mr. Justice Spencer, when that cause was afterwards before the Court of Errors. (14 Johns., R. 498.)"

As to the real estate, that property was sold for a fair consideration; the purpose to defraud creditors is positively denied in the answer, and we are not at liberty to say in this case that the admitted facts require us to declare that fraud existed in the face of these answers, and with no proof to weaken their effect but with the contrary admissions of the complainant in setting down the cause for hearing on the bill and answers.

Besides the answers show and complainant admits that of the purchase money ($10,000) $7,400 were already liens on the property. They at least are beyond our reach. The residue, $2,600, consisting of the purchaser's notes, were immediately after the sale transferred to Mayo & Co. towards the payment of their claim against Welch. Mayo & Co. are therefore in equity the owner of the deed of trust which secures these notes, for the assignment of the notes carried with it the deed of trust which secured them. To make a decree annulling that sale would destroy that security. How can we do that when Mayo & Co. are not parties to this suit? They were at the time creditors of Welch quite as meritorious as the complainant. They have, therefore,

equal equity in this Court, and besides have a legal advantage in their deed of trust of which we ought not to deprive them.

Although under the Statute 13th Elizabeth, chap. 5, a *bona fide* purchaser without notice from a fraudulent grantee gets no title by his conveyance, because his grantor's title was void, yet the rule is different if his purchase be made directly from a fraudulent grantor. In this last case, the proviso to the sixth section saves his conveyance, notwithstanding the fraud of his grantor. This doctrine was laid down by Ch. Kent in Roberts and Boyd *vs.* Anderson, 3 Johns. Ch. R., 371.

In the case before us Mayo & Co. were *bona fide* purchasers without notice from Welch himself of the security which he had reserved on the property in question for the payment of the notes. They are, therefore, protected, even if Welch had been fraudulent in giving them the security.

Nor is the case made better for the complainant by regarding both these transactions as parts of one, for it is not easy to see how one transaction consisting of two parts, both of which are free from fraud, could become fraudulent when considered together.

But the sale of the real estate to Talmadge was not a fraud in law. If allowed to prove his case he might have shown that it was perfectly honest in purchase, and whatever he might have established by proof this complainant admits to be true.

But to this charge of fraud there is another answer which appears on the face of the bill itself, and is also insisted on in Welch's answer to the bill. It is that the whole matter has been tried in the action of replevin, and a verdict and judgment therein rendered in favor of the defendant.

The question of fraud in this case is manifestly one of fact, and most proper to be tried by a jury. After complainant had got his judgment for damages against Welch, he issued his execution, indemnified the marshal, and levied

on the personal property covered by Davis' deed. Davis replevied the property, and the cause was tried by jury and a verdict and judgment rendered in favor of Davis. That verdict and judgment settled the question of fraud, and established the deed, and is conclusive against the complainant in this suit as to the personal property. And if the complainant insists that both deeds are parts of one transaction, and the whole must stand or fall together, it is conclusive in favor of the other also.

In Smith *vs.* McIvor, 9 Wheat., 532, it was held that in all cases of concurrent jurisdiction, the Court which first has possession of the subject must determine it conclusively, and that although courts of equity have concurrent jurisdiction with courts of law in all matters of fraud, yet when the cause has already been tried and determined by a court of law, a court of equity cannot take cognizance of it, unless there be an addition of some equitable circumstances to give jurisdiction. In such case some defect of testimony or other disability which a court of law cannot remove must be shown as a ground for resorting to a court of equity. See also Bank of U. S. *vs.* Beverly, 1 Howard, 143.

This complainant is estopped by that verdict and judgment; for although the action of replevin was nominally against the marshal, Birdsall was the substantial party.

The law on this point is plainly stated in 1 Greenleaf's Evidence, sec. 523, as follows: " But to give full effect to the principle by which parties are held bound by a judgment, all persons who are represented by the parties and claim under them, or in privity with them, are equally concluded by the same proceedings." * * * " The ground upon which persons standing in this relation to the litigating party are bound by the proceedings is, that they are identified with him in interest; and wherever this identity is found to exist all are alike concluded."

We are brought to consider the nature of the decree to be rendered in this cause.

Laying out of view the effect of the verdict and judgment in the action of replevin, complainant having obtained his judgment and issued his execution before instituting the present suit, and having failed in his effort to collect his money by these means, he had a right to the aid of this Court to set aside the deeds to Davis and Talmadge, if they were fraudulent, and to have the property sold for his own benefit. It was error to put his bill in the form of a creditor's bill, but that is immaterial. That relief we cannot afford him in this case, for we must take both these deeds to be valid.

He has a right, however, to redeem the property from the lien of Davis' deed of trust by paying off the debts which it secures, and then selling the property to reimburse himself for the amount thus advanced, as well as to secure payment of his judgment, and if the property assigned to Davis be as valuable as the bill alleges, it will be his interest to do so. If he does not choose to take that risk he may renew his execution, and so retain a lien on the surplus which may remain in Davis' hands after the debts secured by that deed have been satisfied. But for either of these purposes he has the remedy in his own hands without our aid. We cannot, however, hold those deeds to be valid, and yet decree a sale of the property under this bill.

The sale of the real estate to Talmadge was absolute, and it is therefore beyond our reach. Davis is a trustee who has been charged with no fault in the performance of his duty, and we cannot, therefore, remove him. It is to be presumed he will sell the property, as required by his deed, and faithfully execute the trust he has assumed.

The bill must therefore be dismissed.

As it regards the set-off claimed by the defendant, a majority of the Court is of opinion that it cannot be allowed in this cause; but the plea is overruled without prejudice to defendant's right to bring his action at law.

In that opinion I do not concur. I think it a proper de-

fense so far as it goes; its justice has not been denied by the complainant, and, as we have the parties concerned before us, I think we ought to settle their whole controversy, and direct the amount of the set-off to be credited on Birdsall's judgment.

MR. JUSTICE OLIN delivered the following dissenting opinion:

On the 4th December, 1867, the complainant obtained a judgment at law against the defendant Welch, for $875 damages exclusive of costs. Upon this judgment he issued an execution and the Marshal of the District levied on certain personal property in the possession of the defendant Welch, which property was replevied by one Davis and a judgment recovered in the latter suit by Davis against the marshal.

The plaintiff then files a bill in equity usually known as a creditors bill charging that certain conveyances of his personal and real estate made at or about the time of the recovery of the judgment by the complainant were fraudulent and void, and made to hinder and delay his creditors and especially the complainant. These several conveyances are made exhibits in the case both by bill and answer of defendant Welch.

The bill seeks to set aside these conveyances by Welch and subject the property to the payment of the plaintiffs judgment.

Welch in his answer does not deny that these several conveyances were made with intent to hinder and delay Birdsall and other creditors, but sets up the the defense that the judgment recovered by Davis in the replevin suit is a bar to all inquiry in a Court of Equity, not only whether the conveyance of such personal property was fraudulent and void but that the real estate conveyed at or about same time by a different instrument could not be questioned or inquired into although the conveyance upon its face showed it to be fraudulent and void as against creditors.

This defense was very properly abandoned at the hearing in the Court below, and has not been made a point in the argument of the cause in banc.

There are several answers to this supposed defense:

1. The plea or answer does not cover the whole case, as it concerned only the personal property.

Judgment of a court of law is no bar to a suit in equity where fraud is charged in the bill. See sec. 784, Story's Equity Pleading: "If there is any charge of fraud, or if other circumstances are shown by the bill as a ground of relief, the judgment or sentence cannot be pleaded by a plea in bar of the bill."

3. There is no plea in the case, and if all forms of pleading were to be disregarded, the facts stated in the answer amount to no defense to the bill if arranged by the most ungenerous bearing of special pleading.

Two questions are presented by the bill and answers in this case:

1. Were these several conveyances by Welch made with intent to hinder, delay or defraud Birdsall in the collection of his demand? and

2. Were these conveyances fraudulent and void as against the creditors of Welch?

The first is purely a question of fact in this case to be judged of by the statements contained in the bill and answer of Welch.

As I am fully aware that different minds may draw different conclusions from a given state of facts, I can therefore feel no surprise that others do not see under the circumstances of this case a fraudulent intent to hinder or delay creditors. Nevertheless I have come to the conclusion that there was such fraudulent intent, although my brothers who have had the same opportunity to judge of that intent, and are certainly as well, and doubtless better, able to do so than myself, have come to a different conclusion.

I will only state the facts in the case which induce me

to believe that the disposition of his property made by the defendant, Welch, was made with intent to hinder and delay and defraud the plaintiff.

Birdsall was prosecuting Welch for an alleged malicious arrest and false imprisonment. We may, I think, naturally suppose that in such a controversy there was no very kindly feeling subsisting between these parties. Just two days before the verdict is rendered in the case Welch makes such a disposition of his property real and personal as to prevent Birdsall from reaching it on execution, if he should obtain a judgment.

Now, take that fact in connection with the character of the transfer of his property he then made and my mind is forced to the conclusion that the leading object, purpose and intent of those conveyances was to prevent his property being reached by any judgment Birdsall might obtain; those conveyances while they attempt to put the property of Welch beyond the reach of an execution in favor of Birdsall leave Welch in possession of a greater portion of the property.

Here is then a contrivance by which a judgment creditor is set at defiance, and the debtor is left in possession and enjoyment of property which according to law belongs to his creditor.

It was said on the argument of this case by one or more members of the Court that a debtor had the right to prefer one creditor over another, even if he made that preference with the intent to hinder and delay another creditor in the collection of his just debt; such conveyance was valid in law.

I by no means assent to that proposition; while I agree that it is a well settled rule of law that a debtor in failing circumstances may dispose of his property in payment of his debts, giving preference to such of his creditors as he chooses, I still think if he make such preference with intent

to hinder or delay some other creditor in the collection of his debt such conveyance is fraudulent and void.

This is the plain explicit language of the statute; if the conveyance be made with the intent to hinder and delay the creditor, it is void; this question of intent is a fact to be found by Court or jury, but if found, the law pronounces the conveyance void. See Cadogan *vs.* Kennett, decided by Lord Mansfield, 1 Cowp., 434. In the case of Bozman *vs.* Draughan, 3 Stewart, 243, the Supreme Court of Alabama "held that a conveyance with intent to hinder and delay creditors in the collection of their debts was void as against such creditors, though on valuable consideration." The Court of Appeals in Kentucky, in the case of Vernon *vs.* Morton, 8 Dana, 247, held "If the intention in executing the deed be to hinder and delay creditors it will vitiate the whole deed though it be made upon a good consideration, or for the just and equitable purpose of securing an equal distribution of the effects among all the creditors."

In the case of Nicholson *vs.* Leavitt, 4th Sandf., 252, (New York), it is held that an intent to defraud is implied in the intent to hinder and delay creditors, and in answer to the argument that an intent to hinder and delay creditors, there being no intent to defraud them, will not make an assignment illegal, and that a positive intent to defraud must exist, the Court say that a positive intent to defraud always does exist where the inducement to the trust is to hinder and delay creditors, "since the right of a creditor to recover his demand when due is as absolute as the right to recover at all."

Again, in Bank *vs.* Sherman, 2 Douglass, 176, it was held by the Supreme Court of Michigan, "that fraud in fact or an express intent to commit fraud is not necessary in order to render a conveyance fraudulent as against creditors. It is sufficient if the effect of the conveyance is to hinder and delay creditors in the collection of their debts."

In Mitchell *vs.* Stiles, the Supreme Court of Pennsylvania

1 Harris, 306, say: "Whatever the private or actual intent of the deed may have been, it wears the marks which for the benefit of creditors as a matter of public policy the law construes into badges of fraud. Its whole scope and effect is to delay, hinder and obstruct creditors, it is therefore void, and it has been well said by an able American writer in summing up the law on this point, that an assignment in trust for creditors which by its provisions tends to hinder or delay creditors is fraudulent and void in law. See 4 Denio, 217; 7 Howard, 277; 1 Harris, 185.

I hope sufficient has been said to show both from reason and authority that if a transfer of property has been made with the intent to hinder or delay creditors, that transfer is fraudulent and void in law, notwithstanding it be made in payment or satisfaction of an honest and just debt.

I come now to the question whether the conveyances which were made by Welch are upon their face as matter of law, fraudulent and void as against creditors. These several conveyances are a part of the answer; they are called for by the bill and made a part of the answer by the defendant Welch.

I have observed that in the answer of Welch he does not deny that the conveyances he made were made with the intent to hinder and delay creditors, especially Birdsall the plaintiff, except that at the conclusion of his answer he denies all fraud and combination. This allegation is by no means any answer to the charge in the bill, that the conveyance was made with the intent, or as the pleader has stated, with a view, to hinder and delay creditors. It was a very easy thing to say and swear to, if true, that these conveyances were not made with either "a view or the intent to hinder and delay creditors," &c., but by his answer he can only afford to swear that in all these matters he acted in good faith and without fraud. He doubtless believed under the advice of counsel that it was fair and honest to prevent Birdsall from realizing anything upon any judgment he

might obtain and acted in good faith in contriving the means to prevent it.

It is sufficient to say thàt allegations of this kind "acted in good faith, *bona fide*, not guilty of fraud, are as idle as the wind by way of answer to a specific fact. The charge in the bill is that he made these conveyances with intent to hinder and delay the complainant in the collection of his debt, the answer is, not that he did not make them with that view or intent, but that he acted *bona fide* and without fraud.

I recur again to the question whether these conveyances by Welch are upon their face fraudulent and void in law as against his creditors.

It would seem from the face of these conveyances that on the 2d of December, 1867, and two days before Birdsall recovered judgment, the defendant, Welch, executed two assignments of his property including all his personal and real estate subject to execution. It was admitted on the argument, and the facts of the case show, that he was at the time hopelessly insolvent.

He assigns his personal property to the defendant, Davis, in trust to pay on demand $1,157, and six months after date, what date does not appear, $2,000; "that in case default shall be made in the payment of said sums, default pray by whom? Of course Welch. Then Davis shall proceed and sell, after advertising as prescribed, the property assigned, and "out of the money arising from the sale thereof, to retain and pay the said several sums as above mentioned, or such sums as shall remain unpaid at the time of sale and all charges touching the same and including five per cent. to the said party of the second part (Davis) for his diligence and trouble in executing this trust. And the remainder if any to pay over to the party of the first part or to his heirs or assigns."

At the same time Welch and his wife executed a deed of his estate to the defendant Talmadge in consideration of $10,000, as expressed in the deed, and at the same time Tal-

madge executes to Davis a deed of trust to secure the purchase price of the real estate. It recites that Talmadge is indebted to Welch in the sum of $9,000, on four promissory notes payable to Welch in six, twelve, eighteen and twenty-four months after date and conditions that if these notes are not paid at maturity Davis may proceed to sell the property, and out of the proceeds pay the notes to Welch and the balance if any to Talmadge.

I repeat that at the time of these conveyances it was conceded on the argument both below and in this Court that Welch was hopelessly insolvent even if the plaintiff's judgment be blotted out. What have we then upon the face of these papers?

An insolvent conveys all his personal estate in trust to pay a particular debt and reserves the surplus, if any, to himself. At the same time he transfers all his real estate for the consideration of $10,000, and reserves $9,000 payable to himself in 6, 12, 18, and 24 months.

Never in the history of frauds which have come under my observation was one so stupidly conceived, or so bunglingly executed as this.

These conveyances were made at the same time, doubtless under the advice or superintendence of the defendant Davis; Welch apprehending a judgment might be obtained against him, transfers his personal property to Davis directing him to pay out of its proceeds certain debts, and pay the balance if any to him ; the personal property is thus supposed safe from any execution of Birdsall.

He then transfers his real estate to the defendant Talmadge and takes his notes for $9,000, payable in 6, 12, 18 and 24 months, and thus it was supposed the proceeds of his real estate were not subject to execution.

I suppose it can scarcely be necessary to cite authorities to show that if a debtor in failing circumstances makes an assignment of a part of his property in trust to pay one or more of his creditors and reserves the balance if any to him-

self instead of appropriating it to the payment of other of his creditors the transfer is fraudulent and void in law.

I will refer for convenience to the case of Goodrich *vs.* Downs, 6 Hill, 438, because it is so precisely in point with this case. The Court in that case held, that where an assignment was made by a debtor in failing circumstances, of the principal part of his property to pay one or more of his creditors, and provided that the surplus if any should be returned to the assignor, his heirs, &c., such assignment was fraudulent and void upon its face, the provision as to the surplus being a trust for the use of the assignor. This was the precise provision of the deed from Welch to Davis.

The judgment of the Court at Special Term, I still think ought to be affirmed.