ROBERT BROWN AND THOMAS O'MEARA, AS SHERIFF OF LIVINGSTON COUNTY, APPELLANTS, *v.* JAMES J. GUTHRIE, RESPONDENT.

*Attachment — when it cannot be attacked in a collateral proceeding — mortgage of property to secure payment of a part of the mortgagor's debts and in trust to pay other debts — void, when a general assignment containing the same provisions would be.*

This action was brought to recover damages for the conversion of personal property after the same had been levied upon by the plaintiff, a sheriff, under an attachment issued in an action against one Morrison. The defendant after the levy sold the property under a chattel mortgage given to him by Morrison previous to such levy. The defendant attacked the attachment on the ground of the insufficiency of the affidavits on which it was granted.

*Held,* that as the court had obtained jurisdiction over Morrison, and he had not moved to set aside the attachment, the defendant in this action could not contest its validity.

October 20, 1883, the defendant and Morrison, who was then insolvent, entered into a written agreement which recited that Morrison was indebted to the defendant in the sum of $98:).79, and also to other persons in a large amount; that he was the owner of unincumbered personal property of the value of at

least $2,500, and that he desired to obtain from the defendant an additional loan of $1,200. It then provided that Morrison should execute and deliver to the defendant his notes to the amount of $2,400, and secure their payment by a chattel mortgage upon all the goods and chattels then owned by him, and that the defendant should cancel the notes of Morrison then held by him, advance to him $600 within twenty days, and assume and pay such notes and accounts then owing by Morrison to other parties, as Morrison should thereafter direct, to the amount of $619.21.

It was further agreed that Morrison, as the agent of the defendant, should be allowed to sell the said goods and chattels at public vendue, at a credit of not to exceed one year, at such time before the first of the next April as should suit the convenience of Morrison, and that the defendant should personally receive and receipt for all cash payments and notes taken at the sale and retain the same to the amount of the $2,400 notes and pay over any surplus that might remain to Morrison; the defendant being allowed $200 for services to be rendered by him in the premises. The chattel mortgage, which made no reference to the agreement, was filed on November 3, 1883, but the agreement was not, and the plaintiff had no notice of it when the levy was made on November 20, 1883.

At the time of the execution of the agreement and mortgage Morrison was indebted to the plaintiff for the rent of a farm, to recover which the action was brought in which the attachment was issued.

*Held*, that the agreement and mortgage, when read together, showed an intent to hinder, delay and defraud the creditors of Morrison, which rendered them void

That as Morrison was at the time insolvent, and as the property was mortgaged not only for the payment of the debt due to the defendant, but also for the debts due to others of his creditors, it was to be treated as a general assignment, and that as such it was void by reason of the following provisions contained in the agreement, viz.:

(1.) The provision authorizing the debtor to designate such of his creditors as should be paid by the mortgagee, thus enabling the debtor to create preferences subsequently to the transfer of the property.

(2.) The provision securing to Morrison the surplus which would remain after paying the debts due to the defendant, and the creditors to be designated by Morrison, without making any provision for his other creditors.

(3.) The provision authorizing the mortgagor to sell the mortgaged property at public auction, at such time before the first of April then next as would suit his convenience, as it gave to the mortgagor, by implication, the right to the possession of the property until such time, within the limit prescribed, as he should see fit to sell the same.

APPEAL from a judgment in favor of the defendant, entered on the report of a referee.

*McNaughton & Olmstead*, for the appellants.

*Abbott & Abbott*, for the respondent.

SMITH, P. J.:

This action is brought, by leave of the court, under section 677 of the Code of Civil Procedure, to recover damages for the conversion of personal property alleged to have been levied upon by the sheriff, plaintiff, by virtue of a warrant of attachment in favor of his co-plaintiff herein, against one Morrison. After the levy, the defendant took the property and sold the same by virtue of a chattel mortgage executed to him by Morrison previous to the levy. The questions raised by this appeal relate to the validity of the attachment and of the chattel mortgage.

The defendant attacks the attachment on the ground of the alleged insufficiency of the affidavits on which it was granted. That he cannot do collaterally. Jurisdiction of Morrison was obtained in the action against him by the personal service of a summons upon him, and he not having moved to set aside the attachment, it was valid as against him. The referee, therefore, properly held the attachment valid, for the purposes of this action. (*Carr* v. *Van Hoesen*, 26 Hun, 316, and cases there cited by LEARNED, P. J.)

The question of the validity of the chattel mortgage is more serious. That instrument was executed in the following circumstances. On the 20th of October, 1883, the defendant and Morrison entered into a written agreement, by which, after reciting that Morrison was indebted to Guthrie in the sum of $980.79, upon certain promissory notes therein described, and was also indebted to other persons in a large amount, and that he was the owner of certain personal property which he affirmed to be worth at least $2,500 and to be unincumbered, and that he was desirous of obtaining from Guthrie an additional loan of $1,200 or thereabouts, it was stipulated and agreed that in consideration that Morrison would execute and deliver to Guthrie his notes to the amount of $2,400, and secure the payment thereof by a chattel mortgage executed by him upon all the goods and chattels then owned by him, Guthrie would cancel and surrender the notes of Morrison, then held by him, and would furnish to Morrison an additional loan of $600 within twenty days, and would also assume the payment of, and thereafter pay, such notes and accounts then owing by Morrison to other parties, as Morrison should thereafter direct, to the amount of $619.21. It was further agreed that Morrison, as the agent of

Guthrie, should be allowed to sell said goods and chattels at public vendue, at a credit of not to exceed one year, at such time before the first day of April then next, as should suit the convenience of Morrison, and that Guthrie should personally receive and receipt for all cash payments and notes taken at such sale and retain the same to the amount of the $2,400 notes then held by him, to apply in payment of said notes as they matured, Guthrie to account to, and pay over to, Morrison any surplus there might be arising out of said auction, over and above the amount due upon said $2,400 notes. It was further agreed that Guthrie should be allowed $200 for his services, etc., in the premises, which sum, with the sum then owing to Guthrie and to be advanced by him as above specified, made up the $2,400, the consideration of said notes and chattel mortgage. On the same day, and as a part of the same transaction, Morrison executed to Guthrie his three promissory notes for $800, each payable in three, six and eight months, respectively, with interest, and also the chattel mortgage in question, to secure the payment thereof. The mortgage authorized Guthrie to take possession of the mortgaged property and sell the same, in case of non-payment of said debt at maturity, or in case he should at any time deem the property or debt unsafe. The mortgage made no reference to the said agreement. The mortgage was duly filed on the 3d of November, 1883, but the agreement was never filed, and the plaintiff Brown had no knowledge or notice of it, when he levied his attachment, on the 20th of November, 1883. The referee found that upon the execution of the chattel mortgage, Guthrie canceled and surrendered to Morrison the notes for $980.79 then held by him, and that on the 3d of November, 1883, Guthrie advanced to Morrison the sum of $600 in cash in pursuance of said agreement. He also found that at the time of the execution of the said agreement, Morrison made a statement to Guthrie of persons to whom he was then indebted, and the estimated amount he was owing them respectively, and whom he desired that Guthrie should pay as thereafter directed by Morrison, to the amount of $619.21, in pursuance of the terms of said agreement, and that Guthrie subsequently paid thereon, in pursuance of the direction of Morrison, the total sum of $401.28.

At the time of the execution of the said agreement and chattel mortgage, Morrison was indebted to the plaintiff Brown in the sum of $7224.1 for the rent of a farm, to recover which Brown commenced this action, and therein procured and levied his attachment on the 20th of November, 1883. Said action afterwards progressed to judgment, and execution was issued thereon and returned wholly unsatisfied.

The referee found that the chattel mortgage was executed in good faith, and not with the intent to hinder, delay or defraud creditors. That finding, we think, is against conclusive evidence of a fraudu lent intent furnished by the papers themselves. The agreement and the mortgage were parts of one and the same transaction, and are to be read together as evidence of the intent of the parties. The provisions of the agreement, as between the parties to it, override and control the provisions of the mortgage, in all respects in which they clash with each other. The agreement shows on its face that the mortgage covered all the property of Morrison, and from the nature of the transaction and the subsequent inability of the plaintiff to collect his debt, as shown by the return of his execu tion wholly unsatisfied, it is apparent that, at the time of executing the mortgage, Morrison was insolvent. The agreement and mortgage were, therefore, in effect, an assignment by an insolvent debtor of all his property to one of his creditors, not only for the purpose of paying what he then owed to such creditor, but also, in trust, for the payment of such of his other creditors as he should there after designate, not exceeding the amount specified in the agree ment. In that view of the case, the agreement contained several provisions which, if valid, secured to the mortgagor certain rights in respect to the mortgaged property, the effect of which, as it seems to us, was necessarily to hinder and delay his creditors.

One of those was the provision which gave the debtor the right thereafter to designate such of his creditors as should be paid by the mortgagee, thus enabling the debtor to create preferences among his creditors, subsequently to the transfer of his property. It is well established that a debtor cannot put his property beyond the reach of his creditors, by assigning it to trustees for the payment of his debts, unless at the time he definitely settles their respective rights under the conveyance. (*Hyslop* v. *Clarke*, 14 Johns., 458; *Wakeman* v. *Grover*, 4 Paige, 41; S. C., in error, 11 Wend., 187;

*Sheldon* v. *Dodge*, 4 Den., 217.) It is immaterial whether the power to create preferences is reserved by the assignor, or is given to the trustee; in either case it avoids the transfer. (*Barnum* v. *Hempstead*, 7 Paige, 568.) In the present case the mortgagee was clearly a trustee as to the payment of the claims of other creditors. By the transaction, provision was made for a fund to be created and placed in his hands for that purpose, out of the assigned property, and he expressly bound himself to apply it accordingly. The trust could be enforced by the preferred creditors. (Burr. on Assignments, 536.)

Another objectionable provision in the transaction is that which secured to the mortgagor the surplus that should remain after paying the mortgagee, and the creditors to be designated by the mortgagor, without making any provision for other creditors. That provision unquestionably rendered the transaction void, if we are right in regarding it as a general assignment, by an insolvent debtor, in trust for the benefit of preferred creditors. As was said by BRONSON, J., in *Barney* v. *Griffin* (2 N. Y., 365, 371), such assignments "can only be supported when they make a full and unconditional surrender of the property to the payment of debts. The debtor can neither make terms nor reserve *anything* to himself until after all the creditors have been satisfied." * * * Nor can the deed "be made good by showing that there will be no surplus for the debtor after paying the preferred creditors. The parties contemplated a surplus and provided for it; and they are not now at liberty to say that this was a mere form which meant nothing. And although it should ultimately turn out that there is no surplus, still the illegal purpose which destroys the deed is plainly written on the face of the instrument, and there is no way of getting rid of it."

If the transaction had been simply a transfer to Guthrie for the exclusive purpose of paying his own debt, the provision as to the surplus would not have avoided it (*Leitch* v. *Hollister*, 4 N. Y., 211; *Dunham* v. *Whitehead*, 21 id., 131); but, as we have seen, the secret agreement transformed the instrument of conveyance from a mere mortgage for the security of the mortgagee into a general assignment, in trust, for the benefit of other preferred creditors besides himself. Each of the provisions above considered

appears to us to bring the transaction within the condemnation of the statute which declares void as to creditors all transfers of personal property made in trust for the use of the person making the same. (2 R. S., 135, § 1.)

We are also inclined to the opinion that still another provision in the agreement has the like effect, to wit, the provision authorizing the mortgagor to sell the mortgaged property, at public auction, at such time before the first day of April then next as would suit his convenience. True, in so doing, he was to act as the agent of the mortgagee, and to account to him for the proceeds. But the power to sell and to receive the proceeds implied the power to deliver possession to the purchaser, and consequently gave the mortgagor the right to the possession until such time, within the limit prescribed, as he should see fit to sell. The fact that the mortgagee took immediate possession of the property, immediately after the plaintiff attached it, whether with or without the consent of the mortgagor, does not alter the case.

For these reasons we are of the opinion that the judgment should be reversed, and a new trial ordered before another referee, costs to abide event.

BARKER and BRADLEY, JJ., concurred; HAIGHT, J., not sitting.

Judgment reversed and new trial ordered before another referee, with costs to abide the event.