(56 App. Div. 573.)

JENKINS et al. v. JOHN GOOD CORDAGE & MACHINE CO. et al.

(Supreme Court, Appellate Division, Second Department.  December 14, 1900.)

1. MORTGAGE FORECLOSURE—PARTIES PLAINTIFF.
    Defendant corporation, being indebted to plaintiff and others, executed a trust mortgage on all its property to secure an issue of bonds which were to be given to consenting creditors in exchange for their notes against defendant, and plaintiff delivered to defendant's officers notes and collateral securing them, for which plaintiff was to receive a certain number of the bonds when issued, taking meanwhile a certificate of indebtedness for the amount from the officers.  *Held*, that plaintiff's equities attached on the giving of the mortgage, and he might, therefore, maintain action to foreclose, though the bonds were never delivered.

2. SAME.
    The act of defendant's officers in receiving its outstanding securities from plaintiff and giving the certificate of indebtedness therefor, which acts were ratified by defendant's failure to disclaim, gave plaintiff a right to maintain suit to foreclose the mortgage.

3. SAME—PARTIES DEFENDANT.
    Where a corporation executed a trust mortgage on all its property to secure bonds which were to be given to consenting creditors in exchange for the corporation's outstanding securities, but before the bonds were printed certain corporation officers took up securities held by plaintiff, giving him in exchange a certificate of indebtedness, and promising to deliver to him a certain number of the bonds when they were issued, which act the corporation did not disclaim, judgment creditors of the corporation, whose lien was subsequent to the mortgage, were entitled to defend an action in which plaintiff asserted a lien under the mortgage.

4. SAME—CORPORATIONS—RECEIVERS.
    A receiver of a foreign corporation appointed within the state is custodian of the property within the state, and as such has power to defend an action to foreclose a trust mortgage on the corporation property based on an assumed lien under the mortgage.

5. FRAUDULENT CONVEYANCE—TRUST MORTGAGE—NONCONSENTING CREDITORS.
    Where a corporation was indebted to such an extent that its property on execution sale would not have satisfied its creditors, so that no equity of any value remained after a trust mortgage was given to secure its entire indebtedness, and the mortgage was given to secure bonds which were to be exchanged for the outstanding notes of the corporation with such creditors as should consent, while those who did not consent and come in under the mortgage were left without other security, the mortgage was void as an attempt to hinder and delay creditors.

Appeal from special term, Kings county.

Action by Frank Jenkins and another against the John Good Cordage & Machine Company and others.  From a judgment in defendants' favor, plaintiffs appeal.  Affirmed.

The following is the opinion of the court below (SMITH, J.):

"In January, 1897, the unsecured indebtedness of the defendant corporation amounted to about $300,000.  Much of this indebtedness was of long stand-

ing, and had been represented by notes of the defendant company which had been renewed from time to time. Some of the larger creditors were demanding payment of their claims. The defendant company had no cash with which to pay them, and the indebtedness of the company exceeded by about $270,000 all the assets of the corporation aside from the plant and patents. To meet this emergency, the directors of the corporation proposed and did execute and deliver to the Kings County Trust Company, as trustee, a mortgage for $300,-000 upon all this property, real and personal, to secure bonds of like amount, payable in 10 years, with semiannual interest. It was proposed in this way to fund the debt of the corporation by satisfying the claims of creditors with bonds of like amount as far as the creditors would consent. Failing to procure the consent of any creditor, the bonds were to be negotiated at par, if possible, and money raised to pay the nonconsenting creditors. The mortgage was executed upon the 7th day of January, 1897, delivered and filed upon the 8th. It was impossible, however, to procure the printing of the bonds until the latter part of February. The plaintiff corporation was a creditor of the defendant company for moneys loaned to the extent of about $106,000. For this it had some security. In order that the funding plan might be consummated before the last of February, when the bonds could be procured, the officers of the defendant company gave to the plaintiff what has been called a certificate of indebtedness, which was a certificate recognizing the indebtedness to the plaintiff, and its right to the bonds when issued, and which assumed to take the place of the bonds in the consummation of the plan until those bonds should be issued. Upon the receipt of this certificate the plaintiff delivered to those officers all the notes of the corporation held by it and certain collateral. Some criticism has been made that a certain paper given by the defendant company to the plaintiff purporting to assign to it certain rights in some personal property as collateral to some of these notes was not delivered up. But the surrender of the notes would of itself cancel all right to that collateral. The fact must be found that the receipt of the certificate of indebtedness by the plaintiff corporation was upon the consideration of a surrender by the plaintiff corporation of the notes held against the defendant corporation and all collateral thereto. Objection is first made to the maintenance of this action on the ground that the plaintiff has no interest in the mortgage in question because of the nondelivery of the bonds contemplated by the mortgage. A sufficient answer to this objection is that the equities of the plaintiff were, as against both the receiver and the judgment creditors, settled by the giving of the mortgage. Nothing remained to be done save the printing of the bonds. Those equities should be assured to the plaintiff in spite of the formalities contemplated in the delivery of the bonds. Another sufficient answer may be found in the act of the officers of the corporation in delivering the certificate and receiving the securities, ratified by the meeting of the executive committee upon February 16th, in its failure to disclaim the assumed authority of those officers. On the other hand, it is claimed by the plaintiff that neither the receiver nor the judgment creditors are here in a position to defend this mortgage. I can conceive of no better right than has a judgment creditor with a lien subsequent in point of time to the asserted lien of the mortgage. I am compelled to find that the receiver was duly appointed in the New Jersey courts, and under this right would be authorized to defend. But again, under his appointment in New York, he is at least custodian of the property within this state of the corporation, with full power to defend against any attack based upon the assumed lien, if that lien be illegal. The controversy then narrows to the question of the validity of this mortgage. It is not necessary to determine whether this corporation was insolvent within the meaning of the corporation laws prohibiting preferences in the case of insolvency. It was pressed for the payment of debts which it could not pay. The recourse to this funding scheme was the result of this embarrassment. Whatever may have been the estimated value of the property, upon execution sale the property would not have satisfied the claims. With this mortgage, the equity in the corporation has clearly no market value. It might be well found that the plan contemplated the complete funding of the debt as a condition of the validity of the mortgage and as a consideration of the consent of the stockholders thereto. This is the inference which would

naturally be drawn from the testimony of John G. Jenkins himself, and is practically expressed in the certificate of indebtedness upon which this action seems to be brought. If this be so, the mortgage cannot be used for another purpose. But assume the alternative upon which the plaintiff's claim must here rest, that, notwithstanding the failure of the funding scheme, the mortgage was contemplated as a security to those who would come in and accept the bonds in satisfaction of their claims. Upon this assumption the corporation becomes the owner of these bonds. They are offered to the creditors who will consent to the ten-years' extension of time, which is the ultimate object of the mortgage scheme. Those who will not consent are left without security, to procure perchance attachment liens upon a worthless equity. The scheme of the mortgage thus contains to those creditors who will not grant the extension a clear threat to make doubtful, if not worthless, their claims. It becomes an instrument of coercion, which, to my mind, is repugnant to fear dealing with creditors. Its operation must of necessity be a hindrance to them in the collection of their claims. As such it meets the condemnation both of the common law and of our statutes. This conclusion is, to my mind, inevitable, were the creditors strangers to the corporation. Where, however, as it is here, some of the principal creditors are themselves stockholders in this corporation and directors interested to secure a prolongation of its life, and working with the corporation for that end, the vice becomes the more apparent. The plaintiff corporation is composed of three stockholders, all of whom are stockholders in the defendant corporation, and two of them directors. The acknowledged object of the mortgage is to secure an extension of time from the creditors that the corporation may live. In this plaintiff's stockholders have a co-ordinate interest. The significance of the threat thus becomes more apparent, and the position of the other creditors the more helpless. In. the case at bar the mischief was only averted by the supposition that the failure to deliver the bonds had rendered ineffectual the mortgage. In Armstrong v. Byrne, 1 Edw. Ch. 79, a firm, being insolvent, made an assignment of which the vice chancellor writes as follows: "The assignment professes to provide for the creditors named in a schedule by directing the proceeds of the assigned property to be divided among them in proportion to the amount of their respective debts. If it stopped here, it would be unobjectionable. But it goes further. It declares, as a condition of their receiving a dividend, that the creditors shall release the balance of their debts; and also that any creditor not receiving his dividend, and giving a discharge within five days after a dividend is declared, shall be precluded from the benefit of the assignment, and the whole of the property is then to be divided among those creditors who accept the composition. This attempt to coerce creditors into terms which the debtor chooses to prescribe is against the policy of the law, and entirely vitiates the assignment. A debtor in failing circumstances may lawfully assign his property for the benefit of his creditors, and prefer one creditor or a class of creditors. But he shall not fix terms or conditions in order to benefit himself, and likewise say to his creditors, "You must subscribe to these provisions, or you shall not touch the property." Such conditions are inadmissible. He does not benefit himself by merely creating a preference of payment amongst his creditors, because he remains liable to the others until all his debts are paid; but if he stipulates for an absolute discharge before a creditor shall have the benefit of the property, he thereby assumes to himself a power over the creditor for his own personal advantage, namely, of being discharged from his debt by a payment of a part only. And if he can be allowed to lock up his property by means of such an assignment, until the creditors comply with his terms, he can successfully delay, hinder, and defraud his creditors. It is thus brought within the statute made to prevent fraudulent transfers of debtors' property. The principles upon which the decision in Hyslop v. Clarke, 14 Johns. 458, was made. are strongly applicable, and, in my judgment, decisive of the present case. It has been urged in argument that the clause of the assignment in question was only intended as one mode of creating a preference amongst the creditors by giving to those who might accept the composition (as it is called) the benefit of what others might decline, and therefore not unlawful. If that were the case, I certainly should not be disposed to interfere. But it is impossible to avoid seeing that the pref-

erence among the creditors was not the sole object. The debtor, as I have already shown, was stipulating for his own benefit, and by this contrivance endeavoring to coerce his creditors into a compliance with his terms. I must declare the assignment void for fraud upon the face of it.' The principle of the case cited controls, I think, the case at bar. In the one case the advantage sought to be attained was the release of the debt; in the other the extension of the time of payment. In either case the concession to the corporation is one which the creditor may voluntarily grant, but into which he must not be coerced. In Bank v. Sprague, 21 N. J. Eq. 530, the mortgage was given to a trustee to secure 100 bonds of $1,000 each, payable to blank or to bearer, and given at a time when the mortgagors were pressed by their creditors for payment or security for their claims, and were unable to meet their pecuniary obligations. After the execution of the mortgage, the bonds were left in the hands of the mortgagors for distribution among their creditors. or for such disposition as they might choose to make of them. In writing for the court, Van Syckel, J., says: 'That a debtor in insolvent circumstances may prefer certain creditors has been too long the received law of the state to be questioned now. But the proposition that an insolvent may execute a mortgage to a trustee payable in three years or twenty, at his pleasure, for an amount that will more than absorb his property, and take the bonds secured by it into his own possession, and with his property thus beyond the reach of legal process pass them to such of his creditors as may feel constrained to accept them, has heretofore received no judicial sanction in this state. A scheme better adapted to hinder and delay creditors cannot well be conceived. This device operates as an obstruction to creditors, and its effect in this case, as it will be in all cases, was to coerce them into acceding to the debtors' terms under the apprehension that otherwise the bonds would be negotiated to bona fide purchasers, or passed to other creditors whose fears could be more readily excited. The creditor, when offered these bonds, at once sees that he would be subjected to an expensive litigation to sweep away this mortgage in the pursuit of his legal remedy; and it must be conceded that, if this plan can be successfully carried out, the debtor will practically dictate terms to those to whom he is indebted, and it will be at his option whether they shall take a security maturing in three or thirty years.' In Dearing v. Hardware Co., 33 App. Div. 31, 53 N. Y. Supp. 513, a foreign corporation executed a conveyance to a trustee for the creditors of the company. The pertinent part of the decision appears in the opinion of Adams, J., speaking for a unanimous court, as follows: 'The question, however, with which we are more immediately concerned is this, does this mortgage contravene any statute of this state? the contention of the defendants being that in several of its provisions it is repugnant to the policy of this state as declared in what is known as the statute of frauds, and that, consequently, it is not valid as against creditors who have acquired any rights as to property within this state. This contention we are inclined to think is well founded; for the instrument in question, by whatever name it may be called, does apparently contravene the provisions of our statutory law which are designed to prevent a failing or dishonest debtor from hindering or delaying his creditors in the collection of their debts. Rev. St. pt. 2, c. 7, tit. 3, § 1. In the first place, the instrument, so far as it affects the creditors who are specifically mentioned therein, is coercive, in that it expressly directs that the provision for such creditors shall operate only in the event that they shall, after knowledge hereof, avail themselves of the security of this instrument, and accept and abide by the terms and conditions hereof; and all whose debts are due or to become due within ninety days shall assent to the extension of the same for the said period. This, it seems to us, is equivalent to saying to these creditors that, if they will extend their debtor's term of credit to a time fixed by the debtor himself, they can share in whatever benefits are to be derived from the instrument, but otherwise they must take whatever the debtor sees fit to allow them. The effect of such provision must necessarily be to hinder and delay these creditors in the collection of their debts. Hyslop v. Clarke, 14 Johns. 458; Grover v. Wakeman, 11 Wend. 187; Armstrong v. Byrne, 1 Edw. Ch. 79.' Within the authority of the case cited, I think the grounds of the objection sufficiently appear in the pleadings in the case at bar. This objection to the validity of the mortgage does not

seem to have been answered in the very able brief of the plaintiff's counsel. With this conclusion reached, it becomes unnecessary to consider the other questions raised as to the application of the New York or the New Jersey statutes, or as to the right of an insolvent corporation at common law to prefer its creditors. The defendants are entitled to judgment dismissing the plaintiff's complaint, and to a decree holding the mortgage to be illegal, and not a lien upon this property. The securities delivered by the plaintiff to the officers of the defendant corporation, and now with the clerk, become the property of the plaintiff. The American Surety Company can claim no greater right than could the defendant corporation, which clearly has no equity as against these lienors. While holding this mortgage void because of its effect in delaying creditors, I must find that the acts of the plaintiff, and especially of John G. Jenkins, the senior officer and representative of the plaintiff, were in all respects straightforward. There was no corrupt motive to gain any preference. The same security which they were willing to take they offered to the other creditors. Upon John G. Jenkins has fallen the burden of the embarrassment of the defendant corporation. In his effort to deal fairly with all creditors he has unfortunately taken a security which the law, from public policy, must condemn. He has suffered enough in these transactions, and is charged with no costs. The form of the decree may be settled at my chambers at Elmira upon the 14th day of September at 10 o'clock."

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Benjamin Cardozo and Ira Leo Bamberger, for appellant.
Christian G. Moritz, for respondent Rorke.
Edward A. Hibbard, for respondent McAlpin.
Henry C. Wilcox, for respondent Surety Co.
Abel Crook, for respondent Phelan.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Mr. Justice WALTER LLOYD SMITH at special term. One of the principal authorities relied upon below, and cited in the opinion (Dearing v. Hardware Co., 33 App. Div. 31, 53 N. Y. Supp. 513), has, since the argument, been affirmed by the court of appeals, and we are unable to discover any distinction in principle between that case and the case at bar.