which distributed the estate counter to the provisions of the will. If the will as drawn had been probated, then, of course, the claimant had no reason to file her claims, but, in view of the final disposition, the benefit of establishing her claims is obvious.

The said witness, on his cross-examination, testified:

"I was paid $250 out of the estate by my sister. It was paid for the interest I might have in the estate. It was paid to me by Mr. Steenwerth, the executor, at my sister's request. I was at Mr. Wendel's [the counsel for the objectors] office at one time. Q. Ready to contest the claim of your sister? (Objected to. Objection sustained. Exception.)"

I think that the exception was well taken. The $250 was not paid to the witness to discharge any debt, for he testifies that it was paid "for the interest I might have in the estate." His name does not appear in the schedule of those entitled to share in the estate; i. e., as the result of any compromise or arrangement between the heirs. But a separate schedule shows that $250 was paid to the witness, "being advanced at the request" of the claimant, "to be deducted from her one-half interest in the estate of the decedent." If this witness was ready at one time to contest the claims which he now supports by his testimony, is not the objector entitled to show such a state of mind to the court? If it could be elicited that this witness, once adverse to his sister's claim, thereafter was paid $250 by her, even though he testifies that it was "paid for the interest he might have in the estate," is not such evidence competent, relevant, and material? Suppose it could be shown that at the time of this payment the attitude of the witness as to these claims was discussed, and a change thereof demanded from him, or even that such attitude was objected to. I think that it is quite clear that it was error thus to halt the cross-examination. Starks v. People, 5 Denio, 106; Matter of Mason, 60 Hun, 46, 55, 14 N. Y. Supp. 434; Gumby v. Metropolitan Street R. Co., 65 App. Div. 39, 72 N. Y. Supp. 551, affirmed in 171 N. Y. 635, 63 N. E. 1117. The error falls within the limitation of the rule of section 2545 of the Code of Civil Procedure, in that the exceptant was necessarily prejudiced thereby. The decree of the Surrogate's Court should be reversed.

Decree of the Surrogate's Court of Kings County reversed, and proceedings remitted for disposition in accordance with the opinion of JENKS, J.; costs to abide the final award of costs. All concur.

---

(97 App. Div. 79.)

NORTH SIDE BANK OF BROOKLYN v. JOHN GOOD CORDAGE & MACH. CO. et al.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. RECEIVERS—TITLE TO PROPERTY—PRIOR LIENS—JUDGMENT CREDITORS.
     Judgment creditors of a corporation, who were made parties to a foreclosure action of a corporation mortgage, have a vested right in the property of the corporation, prior to that of the receiver appointed for the corporation, who took its property subject to existing liens.

---

¶ 1. See Corporations, vol. 12, Cent. Dig. § 2248.

2. MORTGAGES—FORECLOSURE—DEFENSES—FRAUD—TO WHOM AVAILABLE.

    The defense of fraud in a corporation mortgage is open to judgment creditors who are made parties to a suit to foreclose the same, as well as to the receiver of the corporation.

3. RECEIVERS—ATTORNEYS—ALLOWANCES—PRIORITY OF CLAIM.

    Where a suit to foreclose a corporation mortgage was defended on the ground of fraud, by the receiver of the corporation, and by judgment creditors who were made parties to the suit, and the defense was successful, the attorneys for the receiver were not entitled to an allowance for services to be paid out of the corporation property ahead of the judgment creditors, whose lien accrued prior to the receivership.

Appeal from Special Term, Kings County.

Action by the North Side Bank of Brooklyn against the John Good Cordage & Machine Company and others, in which Messrs. Wallach and Cook, attorneys for the receiver of the said cordage company, moved for an allowance for services, to be paid ahead of James J. Phelan and another, judgment creditors of said cordage company, and appeal from an order denying said motion.   Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Alfred A. Cook (Leopold Wallach, on the brief), for appellants.

Abel Crook, for respondents.

WOODWARD, J.   The learned court at Special Term, in a memoranda in this matter, says, "I think the propositions on which the motions are based are not even debatable," and we are inclined to concur in this opinion.   It appears from the petition that one Berthold A. Reiss, now deceased, was appointed receiver of the John Good Cordage & Machine Company on the 15th day of July, 1897, and that he retained as his attorneys the appellants in this proceeding.   On the 9th day of January, 1897, the said cordage company had made, executed, and delivered to the Kings County Trust Company of Brooklyn, as trustee, a mortgage or deed of trust for the sum of $300,000, covering its properties in Kings and Queens counties, and bonds aggregating $106,-000 had been issued and disposed of to Frank & J. G. Jenkins, a corporation, under the provisions of this trust deed.   The latter corporation, upon the refusal of the Kings County Trust Company to act, brought an action for the foreclosure of the mortgage; and Mr. Reiss, as receiver, under advice of his attorneys, defended the action, alleging the fraudulent character of the mortgage, and the litigation resulted in the court holding that the same was fraudulent and void as against the receiver and judgment creditors.   Jenkins v. John Good Cordage & Machine Co., 56 App. Div. 573, 68 N. Y. Supp. 239; Id., 168 N. Y. 679, 61 N. E. 1130.   In the foreclosure action, James J. Phelan and David H. McAlpin, as judgment creditors, whose rights in the cordage company's property had become vested, were made parties, and appeared by their attorneys throughout the litigation, and, so far as appears from the record, were as instrumental in bringing about the results as the attorneys for the receiver.   Messrs. Wallach and Cook, attorneys for the receiver, now move for an allowance of $15,000 for services—this sum to be paid out of the property of the cordage company ahead of the judgment creditors—upon the theory

that they have rescued this property and made it available for the payment of these claims. That is, parties who have appeared in a litigation by their own attorneys, and who have advised and consulted with the attorneys for the receiver—as much to his advantage as their own, in all probability—are to be deprived of their property, to the extent of thousands of dollars, to compensate the attorneys for the receiver, upon the theory that it was by reason of the receiver's defense, through his attorneys, that the property was saved from the lien of the $300,-000 mortgage. No precedent appears in the books, so far as we are able to discover, for such an allowance. The judgment creditors, on being made parties to the foreclosure action, had a vested right in the property of the cordage company. They had rights prior to those of the receiver, who took only the property of the cordage company subject to the existing liens upon it. The trust mortgage being fraudulent, that defense was open to the judgment creditors equally with the receiver. There is no presumption that the attorneys for the judgment creditors were incapable of asserting this defense, or that they would not have been able to maintain the litigation if the receiver had not appeared at all. It is rather extraordinary that the receiver's counsel should feel that they were entitled to compensation for rescuing this property, when both of the judgment creditors were represented in the litigation, and presumptively discharged all of the duties of attorneys in such cases. The judgment creditor's attorneys might with equal propriety claim a right to compensation for saving a portion of the property to the receiver, for it does not appear that the receiver did not have the benefit of the counsel of the judgment creditors quite as much as the latter had the benefit of the counsel of the receiver. The truth is that the defense was equally available to the receiver and the judgment creditors, and they equally availed themselves of the defense, and, their interests being the same, they acted together. They both succeeded, and the rights of the judgment creditors cannot be taken from them by a proceeding in the nature of that now before us. The order appealed from should be affirmed, with costs.

Order affirmed, with $10 costs and disbursements. All concur.